RF&P Corporation

v.

George B. Little, et al.

Record No. 930376

Virginia Retirement System, et al.

v.

George B. Little, et al.

Record No. 930379

February 25, 1994

Present: All the Justices

*Robert E. Eicher (David R. Johnson; Williams, Mullen, Christian & Dobbins,* on briefs), for appellant. (Record No. 930376)

*J. Burke McCormick; George B. Little (Janet Singletary Thomas; Little, Parsley & Cluverius,* on brief), for appellees. (Record No. 930376)

*Anthony F. Troy; Richard L. Walton, Jr.,* Senior Assistant Attorney General *(Stephen D. Rosenthal, Attorney General, Mary Yancey Spencer, Deputy Attorney General; Michael K. Jackson, Senior Assistant Attorney General; James C. Roberts; Alexander M.*

*Macaulay; Mays & Valentine,* on briefs), for appellants. (Record No. 930379)

*J. Burke McCormick; George B. Little (Janet Singletary Thomas; Little, Parsley & Cluverius,* on brief), for appellees. (Record No. 930379)

JUSTICE KEENAN delivered the opinion of the Court.

These appeals arise from the trial court's interpretation of the Virginia Freedom of Information Act, Code §§ 2.1-340 to -346.1 (the Act). The specific issues presented are whether the trial court erred: (1) in ruling that the Board of Directors of RF&P Corporation (the RF&P Board) is a "public body," within the meaning of the Act; (2) in finding that Jacqueline G. Epps willfully and knowingly violated the Act; and (3) in awarding George B. Little costs and attorney's fees of $133,170.55 under the Act.

I.

In December 1991, Little filed his petition for injunctive and other relief under the Act, naming, among others, the Virginia Retirement System (VRS), the Board of Trustees of the Virginia Retirement System (the VRS Board), System Holdings, Inc. (SHI), the RF&P Board, and Epps, Chair of the VRS Board and a director of SHI. He asked the trial court, among other things, to find that the defendants had violated the Act and to enjoin them from any further violations. Little also asked the trial court to find that Epps had willfully and knowingly violated the Act and to award him reasonable costs and attorney's fees.

VRS was established by the General Assembly to maintain a retirement system for state employees. It is administered by a Board of Trustees appointed by the Governor. Code § 51.1-109. The VRS Board is authorized by statute "to acquire and retain every kind of property and every kind of investment," using the "judgment of care . . . which [persons] of prudence, discretion, and intelligence exercise in the management of their own affairs." Code § 51.1-116.

The evidence shows that in March 1990, as part of its investments, VRS held approximately 20% of the stock in RF&P Corporation (RF&P). Based on this interest, VRS was entitled to appoint two directors to the RF&P Board. The VRS Board appointed two of its members, Epps and Mark T. Finn, to those positions.

In June 1991, as part of its plan to acquire ownership of 100% of RF&P's stock as authorized by Code § 51.1-116, VRS created SHI, a single-purpose, non-profit corporation, for the purpose of holding the RF&P stock. The RF&P stock is SHI's only asset.

As the sole shareholder of SHI, VRS appointed the SHI Board of Directors. The initial directors of SHI were Epps and Finn, and a third member who later resigned. In November 1991, Walter J. Mika, Jr., was named a director. Epps, Finn, and Mika were all VRS Board members as well.

VRS eventually acquired 100% of RF&P's stock through its ownership of SHI. However, RF&P and each of its subsidiaries have continued to operate as for-profit Virginia stock corporations. These corporations do not receive any appropriations from the Commonwealth. The value of VRS's investment in RF&P is approximately $500,000,000.

Upon its acquisition of 100% of RF&P's stock, VRS, through SHI, was authorized by Code § 51.1-151 to appoint all the members of the RF&P Board. The "non-public" members of the RF&P Board resigned in October 1991, leaving only Epps and Finn as RF&P Board members. VRS authorized SHI to appoint new directors to the vacant positions on the RF&P Board. Epps and Finn, acting both as Board members of SHI and as the only remaining members of the RF&P Board, appointed five new directors to the RF&P Board.

In February 1991, Little had written a letter to VRS, informing it that he had not been receiving notice of VRS meetings, which he earlier had requested pursuant to Code § 2.1-343. In that letter, Little again requested that he be notified of meetings both of the VRS Board and of all committees and subcommittees thereof.

On August 15, 1991, at a meeting of the VRS Board of which Little was notified, Epps initially refused to allow a photographer from the *Richmond News Leader* to take photographs of the meeting, stating, "I know the law and there is nothing that says you have to let someone take pictures." Epps testified that she had directed Glen Pond, VRS's Director, to seek advice from the Office of the Attorney General regarding this request. Relying on what she understood that advice to be, Epps initially prohibited the taking of any photographs. However, after an attorney representing the *Richmond News Leader* came to the meeting and read portions of Code § 2.1-343 to her, Epps ultimately allowed the photographs to be taken.

On November 4, 1991, the SHI Board held a meeting to which the VRS Board members were invited. Epps testified that she was "shocked" that all the members of the VRS Board attended. She stated that she had scheduled the meeting to discuss hiring a consultant for SHI. Epps conceded, however, that VRS business also was discussed at the meeting. Little was not notified of this meeting.

S. Buford Scott, a VRS Board member, testified that VRS business was discussed at the meeting, including the fact that Epps and Finn

had failed to consult any other members of the VRS Board concerning their appointment of the new RF&P directors. Scott stated that several VRS Board members were upset about Epps's and Finn's conduct, and that one member stated an opinion that the VRS Board had been "blind sided" by their actions.

Scott also testified that he was not furnished with a copy of the Act, either when he was appointed to the VRS Board in 1984 or when he was reappointed in 1988. Epps also was not furnished with a copy of the Act when she was appointed to the VRS Board in 1990, and she testified that she was not aware of this requirement in the Act.

Epps testified that she was familiar with the Act, having interpreted its provisions as part of her prior duties as an Assistant Attorney General. However, Epps also stated that she was not familiar with every provision of the Act. The record also shows that, earlier in Epps's tenure as VRS Board Chair, Little had filed another suit against VRS under the Act. In that case, a judge of the Circuit Court of the City of Richmond ruled that VRS had committed technical violations of the Act.

Here, after a two-day hearing, by letter opinions and order, the trial court held, among other things, that the RF&P Board "was effectively created as a committee to perform VRS's function of investing for the state employee retirement plan; therefore, the Board is a public body subject to [the Act]." The trial court also held that Epps had willfully and knowingly violated the Act and ordered her to pay $250 to the State Literary Fund, pursuant to the civil penalty provision of Code § 2.1-346.1.

The trial court enjoined VRS, the VRS Board, and "committees or subcommittees of the Board" from holding any further meetings without complying with all requirements of the Act. However, the trial court, noting "the uniqueness of the relationship" between VRS and the RF&P Board, suspended execution of "such portion of the VRS injunction which reaches to the RF&P Board of Directors" during the pendency of this appeal. Finally, the trial court found that Little had substantially prevailed in his suit and, pursuant to Code § 2.1-346, ordered that he recover $133,170.55 in attorney's fees from VRS and SHI, jointly and severally. These appeals followed.

## II.

RF&P argues that the trial court erred in ruling that the RF&P Board is a "public body," within the meaning of the Act. RF&P contends that the trial court's holding disregards the settled principle that

a corporation is a legal entity completely distinct from its share-holders. RF&P further asserts that the record does not support the trial court's decision to "gently lift" the corporate veil and to "look realistically at the relationship between the managing boards of VRS, SHI, and RF&P." In response, Little first contends that, since the General Assembly amended the Act in 1993 to include RF&P and SHI specifically within the Act's definition of "public body," the issue raised by RF&P is moot. Little also argues that resolution of the RF&P Board's status as a "public body" under the Act does not require a piercing or lifting of the corporate veil. Rather, Little asserts that, because the Act must be liberally construed, the pre-amendment definition of "public body" applied by the trial court plainly encompasses the RF&P Board. We disagree with Little.

■ Initially, we hold that RF&P's appeal is not moot. While the trial court did not order direct injunctive relief against the RF&P Board, the court stated in its final order that since the RF&P Board "is a committee or subcommittee of the VRS Board of Trustees, meetings held by the RF&P Board of Directors in violation of [the Act] would also be in conflict with the specific injunction against VRS." Thus, the trial court recognized that the terms of its injunction covered the RF&P Board's actions.

■ Injunctive relief under the Act is an "extraordinary and drastic remedy [and] is not to be casually or perfunctorily ordered." *Nageotte v. King George County,* 223 Va. 259, 270, 288 S.E.2d 423, 428 (1982). If this Court does not address the issue whether the trial court erred in ruling that the RF&P Board was a "committee or subcommittee" of the VRS Board and, thus, fell within the definition of "public body" in effect at the trial of this case, that portion of the injunction reaching the RF&P Board will remain in effect indefinitely, irrespective of its validity. Thus, since the issue here is not one in which there is no actual controversy or in which no relief can be afforded, it is not moot. *See Hankins v. Town of Virginia Beach,* 182 Va. 642, 643-44, 29 S.E.2d 831, 832 (1944).

Former Code § 2.1-341, at issue here, defined "public body" to include

> any legislative body, authority, board, bureau, commission, district or agency of the Commonwealth . . . and other organizations, corporations or agencies in the Commonwealth, supported wholly or principally by public funds . . . including any committees or subcommittees of the public body created to perform delegated functions of the public body or to advise the public body.

■ The trial court found that the RF&P Board fell within this definition, ruling that it "was effectively created as a committee to perform VRS's function of investing for the state employee retirement plan." The record, however, contains no evidence to support this finding.

■ Applying a liberal construction to the statutory definition, we hold that there is no evidence that the RF&P Board was created as a committee or subcommittee of VRS or SHI to perform delegated functions. The RF&P Board was created upon the filing of RF&P's articles of incorporation and the organizational meeting of its initial directors. *See* Code §§ 13.1-621 and 13.1-623. These events occurred in 1988, approximately three years before Epps and Finn exercised their authority under RF&P's bylaws and Code § 51.1-151 to fill the five vacancies on the RF&P Board.

■ Moreover, the contention that the RF&P Board is a subcommittee or committee of a public body completely disregards RF&P's corporate identity. RF&P and SHI are distinct legal entities. The fact that SHI is RF&P's sole shareholder does not alter the separate character of the two corporations. *See Appalachian Power Co. v. Greater Lynchburg Transit Co.,* 236 Va. 292, 296, 374 S.E.2d 10, 12 (1988).

A corporate entity cannot be disregarded unless it is proved that the corporation is "the *alter ego,* alias, stooge, or dummy of the individuals sought to be [held personally accountable] and that the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime." *Cheatle v. Rudd's Swimming Pool Supply Co.,* 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987). The record here contains no evidence that RF&P occupied such a status in relation to VRS, the VRS Board, SHI, or the SHI Board.

■ Rather, the record shows that RF&P is a holding company that comprises several subsidiary corporations engaged in the acquisition, development, and management of real estate. RF&P and its subsidiaries conduct these activities both individually and in co-ventures with private entrepreneurs. RF&P is exclusively responsible for its conduct of this business and neither VRS nor SHI instructs or advises RF&P regarding these operations.

■ The evidence also shows that RF&P's business was conducted in substantially the same manner after VRS acquired 100% of RF&P's stock as it had been conducted prior to the acquisition, except for the change in composition of the RF&P Board. Further, the five new directors appointed by Epps and Finn were not affiliated with VRS or SHI. Based on the above evidence, and considering the absence of any evidence that RF&P is a sham corporation, we hold that the trial court

erred in concluding that the RF&P Board is a "public body" subject to the Act.

## III.

In reviewing whether the trial court erred in finding that Epps willfully and knowingly violated the Act, we initially must determine the applicable standard of proof in the trial of such cases. The Act's penalty provision, Code § 2.1-346.1, is silent regarding what standard of proof should be applied. It provides, in material part, that if the court

> finds that a violation was willfully and knowingly made, [it] shall impose upon such member in his individual capacity, whether a writ of mandamus or injunctive relief is awarded or not, a civil penalty of not less than $25 nor more than $1,000, which amount shall be paid into the State Literary Fund.

Epps argues that the trial court erred in applying the evidentiary burden of a preponderance of the evidence. She asserts that the trial court should have required proof by clear and convincing evidence, because the imposition of a fine under Code § 2.1-346.1 can have a significant impact on a defendant's reputation. Epps also argues that use of this higher evidentiary standard is appropriate, because Code § 2.1-346.1 requires proof of a willful and knowing violation, rather than simply a negligent violation. Finally, Epps contends that Code § 2.1-346.1 is punitive in nature and therefore must be strictly construed. She argues by analogy that, since attorney disciplinary proceedings are governed by an evidentiary standard requiring "clear proof," a similar standard should be employed in cases involving an alleged violation of the Act. *See Seventh Dist. Comm. of the Va. State Bar v. Gunter,* 212 Va. 278, 284, 183 S.E.2d 713, 717 (1971).

In response, Little argues that a higher standard of proof is not warranted in proving a violation of Code § 2.1-346.1. He contends that the consequences of paying a fine to the State Literary Fund are not comparable to the consequences of the suspension or revocation of a license to practice law. Moreover, Little asserts that nothing contained in the Act supports the imposition of a higher standard of proof and that, if the General Assembly had intended to require clear proof, it could have stated so in the Act. We agree with Little.

The General Assembly has authorized the imposition of civil penalties for violations of various statutes regulating the conduct of

both public officials and private citizens.[1] In none of these instances has the General Assembly stated that such statutory violations must be proved by clear and convincing evidence. In fact, these statutes occasionally specify that a preponderance standard is applicable.[2] More frequently, however, the statutes are silent regarding what burden of proof should be applied.

■ As a general rule, civil litigants are assigned the burden of proving their cases by a preponderance of the evidence. *Burks v. Webb*, 199 Va. 296, 307, 99 S.E.2d 629, 638 (1957). The requirement of proof by clear and convincing evidence generally is limited to certain cases that are equitable in nature, such as suits involving fraud and misrepresentation, undue influence, estoppel, and requests for the imposition of constructive and resulting trusts. Friend, *The Law of Evidence in Virginia* § 9-9 (4th ed. 1993); *see also Bacon v. Bacon*, 3 Va. App. 484, 489, 351 S.E.2d 37, 40 (1986). The case before us involves no such equitable principles.

In addition, we find it significant that, of several statutes authorizing the imposition of civil penalties on public officials, none states that a higher standard of proof is required for enforcement of its provisions. Further, the conduct prohibited by these statutes is such that a proven violation would be at least as damaging to a public official's reputation as a proven violation of Code § 2.1-346.1. Such statutes include Code § 2.1-639.57, which penalizes legislators who engage in conduct that suggests a conflict of interest, and Code § 2.1-639.21, which penalizes public officials who knowingly solicit or accept money or any other thing of value for services performed within the scope of their official duties.

■ The absence of language stipulating a higher standard of proof in these instances, as in the case of violations under the Act, is consistent with the policy underlying all similar statutory provisions, that of holding public officials accountable under the law for the breach of duties entrusted to them. If this Court were to apply a standard of

---

[1] *See, e.g.,* Code § 23-38.44:2 (providing for assessment of a civil penalty against any person who fraudulently obtains a student loan guaranteed by the State Education Assistance Authority); Code § 24.2-930 (providing for imposition of civil penalties upon certain candidates for state offices who file late or incomplete reports of contributions and expenditures); Code § 32.1-36.1 (providing for a civil penalty for making an unauthorized disclosure in violation of confidentiality restrictions on tests for human immunodeficiency virus); Code § 36-107.1 (providing for a civil penalty for failing to comply with law governing the sale of residential structures with lead-based paint levels exceeding Code standards).

[2] *See, e.g.,* Code § 10.1-569 (violation of regulation or order of Soil and Water Conservation Board); Code § 15.1-687.22 (wrongful demolition, razing, or moving of historic buildings).

proof not specified by these statutes, and higher than that imposed in the vast majority of civil cases, we would undermine the very purpose of these enactments.

Further, Code § 2.1-346.1 requires proof that a violation is "willfully and knowingly made." This language effectively provides for a strict construction of the statute and operates as a safeguard, insuring that public officials will not be sanctioned under the Act for actions that are based on a good faith interpretation of its provisions. Therefore, we conclude that the evidentiary burden of a preponderance of the evidence is applicable to the proof of violations of Code § 2.1-346.1.[3]

## IV.

We next consider whether the evidence is sufficient to support the trial court's finding that Epps willfully and knowingly violated the Act. In accordance with Code § 8.01-680, the trial court's decision will be upheld unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it. *Bowers v. Westvaco Corp.*, 244 Va. 139, 150, 419 S.E.2d 661, 668 (1992). Since the trial court has heard the evidence ore tenus, its findings based on an evaluation of the testimony are entitled to the same weight as those of a jury. *Id.*; *Quantum Dev. Co. v. Luckett*, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991).

Epps argues that the evidence is insufficient to support the trial court's finding that she committed both a willful and a knowing violation of the Act. Specifically, she contends that there is no evidence to support the trial court's conclusion that she deliberately avoided becoming familiar with the Act's provisions. Rather, Epps asserts that, given the "uniqueness" of the relationship involving VRS, SHI, and the RF&P Board, as well as the complexity of the Act, the evidence shows only that any violations of the Act on her part arose from confusion concerning its requirements.

Little agrees that a finding of willful and knowing misconduct under the Act requires evidence of more than mere negligence. He argues, however, that the evidence is sufficient to support the trial court's conclusion that Epps's conduct was willful and knowing, in

---

[3] We reject Epps's argument that actions for violations of the Act are analogous to attorney disciplinary proceedings. The loss of the means of one's livelihood is a far greater penalty than the assessment of a fine under the Act. In addition, damage to professional reputation resulting from sanctions for a violation of the Act is entirely speculative, while suspension or revocation of a professional license manifestly affects a person's professional reputation.

that it was based on a "conscious failure to familiarize herself with the [Act]."

Code § 2.1-346.1 provides for civil penalties against individual public officials, as well as public bodies. *See Hale v. Washington County Sch. Bd.,* 241 Va. 76, 81, 400 S.E.2d 175, 178 (1991). On appeal, imposition of such penalties will be upheld if there is credible evidence to support the trial court's finding that the violation was willfully and knowingly made.

The terms "willfully" and "knowingly" are separate and distinct elements that must be proved before a penalty can be imposed under Code § 2.1-346.1. Conduct is "willful" when it is intentional. *United States v. Murdock,* 290 U.S. 389, 394 (1933); *Lynch v. Commonwealth,* 131 Va. 762, 766, 109 S.E. 427, 428 (1921); *Snead v. Commonwealth,* 11 Va. App. 643, 646-47, 400 S.E.2d 806, 807-08 (1991). "[T]he term 'knowingly,' when used in a prohibitory statute, is usually held to import a knowledge of the essential facts from which the law presumes a knowledge of the legal consequences arising therefrom." *Gottlieb v. Commonwealth,* 126 Va. 807, 810, 101 S.E. 872, 873 (1920).

As the trial court recognized, Little not only had to prove that Epps willfully and knowingly violated the Act, but also that his own rights had been violated by her conduct. However, the trial court held that it could consider evidence of other violations not affecting Little for the limited purpose of determining Epps's "state of mind," relative to her claim of good faith ignorance and confusion regarding the Act's provisions.

For this limited purpose, the trial court considered Epps's initial failure to allow photographs to be taken at the August 15, 1991 meeting of the VRS Board, as well as the fact that she was unaware that the Act required VRS's administrator or legal counsel to provide a copy of the Act to VRS Board members within two weeks following their appointment and reappointment to the Board. The trial court also considered the evidence that, in September 1990, while serving on the VRS Board, Epps had additional notice of the serious implications of the Act, based on some technical violations of the Act found against VRS in other litigation.

We agree with Little that the trial court could consider this evidence, since it was probative of Epps's knowledge of the Act and the extent to which she was on notice of the consequences of its violation. As such, this evidence was relevant to the issue whether her violation of the Act at the November 4, 1991 meeting was "knowingly made," within the meaning of Code § 2.1-346.1.

In reaching its conclusion that Epps's conduct was both willful and knowing within the meaning of the Act, the trial court relied on the aggregate of Epps's knowledge and conduct, rather than on any one incident. Further, the trial court rejected Epps's assertion that her conduct resulted from confusion in interpreting the Act. The trial court stated, in part, that

> there is nothing complex about the [requirement in Code § 2.1-343] that public meetings be open to non-interfering photography . . . ; and there is nothing complex about the requirement that meetings of three or more members of a public body (or two, if that number constitutes a quorum), called to discuss business of that public body, be open to the public unless formally held in executive session . . . .

The trial court made a factual finding that the November 4, 1991 meeting was both a SHI and a VRS Board meeting from the outset. This finding, in large part, was based on the trial court's assessment of the credibility of Epps's explanation that the meeting was not called to discuss any VRS business, and that she was shocked when all the VRS directors appeared at the meeting. The trial court found that it could not accept Epps's explanation, given the significance of the RF&P investment to SHI and VRS. The court also found it doubtful that, given the relationship between SHI and VRS, Epps could believe that SHI's business was separable from VRS's business.

Finally, the trial court deemed Epps's testimony that she had never read the entire Act "a remarkable admission for a VRS Chairperson in light of past . . . litigation [under the Act] involving the VRS." Thus, the court concluded that Epps had made a "conscious decision to avoid familiarity with [the Act]."

As trier of fact, the trial court is the judge of the credibility of the witnesses. *Cheatham v. Gregory*, 227 Va. 1, 4, 313 S.E.2d 368, 370 (1984). Its finding is not to be set aside on appeal unless it is plainly wrong. *Morris v. Mosby*, 227 Va. 517, 522, 317 S.E.2d 493, 497 (1984). Here, the trial court concluded that, given Epps's prior knowledge of the content of the Act and of its significance, her actions as VRS Board Chair could not be reconciled with her assertion of good faith ignorance. We cannot say, as a matter of law, that this assessment of Epps's credibility was plainly wrong.

The evidence also showed that Epps knew VRS Board meetings are subject to the notice provisions of the Act, that she knew no notice was given regarding a VRS Board meeting on November 4,

1991, and that she knew VRS business was being discussed openly at that meeting, which she and all the other VRS Board members attended. Thus, once the trial court rejected Epps's explanation of the reasons for her conduct, the evidence concerning her actions, when viewed in the context of her prior exposure to the Act and her notice of VRS's past violations, was sufficient to support the court's judgment. Therefore, we affirm its holding that Epps willfully and knowingly violated the Act.[4]

V.

VRS and SHI argue that the trial court erred in failing to substantially discount the attorney's fees claimed by Little in his action against them. Code § 2.1-346 provides, in material part, that

> [i]f the court finds the denial [of rights and privileges] to be in violation of the provisions of this chapter, the petitioner shall be entitled to recover reasonable costs and attorney's fees from the public body if the petitioner substantially prevails on the merits of the case, unless special circumstances would make an award unjust.

The trial court awarded Little costs and attorney's fees of $133,170.55. In support of his request for costs and attorney's fees, Little submitted into evidence affidavits that included 37 pages of detailed billing records relating to this case. Little also submitted into evidence affidavits of two Richmond attorneys who attested to the reasonableness of the fees requested. VRS and SHI, however, failed to offer any evidence regarding the reasonableness of Little's request for costs and fees.

Under Code § 2.1-346, proof of even a single denial of the rights and privileges conferred by the Act is sufficient to justify an award of attorney's fees. As in all cases where attorney's fees are recoverable pursuant to statute, the reasonableness of the fees requested must be determined by the evidence. *Tazewell Oil Co. v. United Virginia Bank,* 243 Va. 94, 111-12, 413 S.E.2d 611, 621

---

[4] We reject Epps's argument that, since the trial court struck the evidence as to Finn's alleged violation of the Act, it also was required to enter judgment in her favor. In contrast to the evidence regarding Finn, the evidence as to Epps shows that she had prior employment experience interpreting the Act. Also, Epps, not Finn, "called for" the November 4, 1991 meeting, articulated its purpose, and decided to invite the VRS Board members to attend. The trial court was entitled to consider these additional facts in determining whether Epps willfully and knowingly violated the Act.

(1992); *Mullins v. Richlands Nat'l Bank,* 241 Va. 447, 449, 403 S.E.2d 334, 335 (1991). Since the affidavits and time records submitted by Little were wholly unrefuted by any evidence offered by VRS and SHI, we hold that the amount fixed by the trial court is supported by the evidence in this case, and we find no abuse of discretion in the trial court's award. *See Tazewell Oil,* 243 Va. at 112, 413 S.E.2d at 621.[5]

For these reasons, we will affirm the judgment of the trial court that Epps violated the Act and its award of costs and attorney's fees to Little; we will reverse the trial court's judgment concerning the RF&P Board and enter final judgment in favor of RF&P.

> Record No. 930376 - *Reversed and*
> *final judgment.*
> Record No. 930379 - *Affirmed.*

CHIEF JUSTICE CARRICO, with whom JUSTICE HASSELL joins, dissenting.

With respect to the trial court's finding that the chair of the board of trustees of the Virginia Retirement System violated the Virginia Freedom of Information Act, I would hold that the court erred in applying a burden of proof by a preponderance of the evidence. The Act requires a finding that a violation has been *willfully and knowingly made,* and I think the necessity for such a finding calls for a higher burden of proof.

I would require proof of a violation by clear and convincing evidence. And, judged by that standard, the evidence, in my opinion, falls far short of establishing a willful and knowing violation of the Act. Indeed, it seems to me that one has to struggle mightily to make out a violation by a preponderance of the evidence, much less by clear and convincing evidence.

Accordingly, I would reverse the finding that the chair of the board of trustees of the Virginia Retirement System willfully and knowingly violated the Act. And, since I agree with the majority that the trial court erred in ruling that the RF&P board is a public body, I would also reverse the award of attorney's fees and costs to George Little.

---

[5] Our decision is not altered by the fact that Little did not prevail on each theory he advanced to the trial court. To obtain an award of attorney's fees under Code § 2.1-346, Little was required to show that he substantially prevailed on the merits of the case, not that he prevailed on every issue he raised. VRS and SHI were entitled to present evidence disputing the reasonableness of fees claimed from any aspect of the litigation, including those aspects in which Little did not prevail, but elected not to do so.