COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bray and Humphreys
Argued at Richmond, Virginia


SUSAN W. KREITER

                                    MEMORANDUM OPINION* BY
v.    Record No. 1856-01-2        JUDGE ROBERT J. HUMPHREYS
                                         JULY 23, 2002
VICTOR W. KREITER, JR.


            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                     Gary A. Hicks, Judge

          John B. Mann (Levit, Mann & Halligan, on
          briefs), for appellant.

          Jennifer E. Crossland (William H. Parcell,
          III; Parcell, Webb & Wallerstein, P.C., on
          brief), for appellee.


     Susan W. Kreiter (wife) appeals a decision by the circuit

court, denying her motion to set aside the property settlement

agreement tendered by Victor W. Kreiter, Jr.(husband), pursuant to

their divorce proceedings.  Wife contends the trial court erred in

refusing to set aside the agreement as she had withdrawn her offer

to accept the terms of the agreement prior to its filing, and

because she signed the agreement under duress.  For the reasons

that follow, we affirm in part and reverse and remand in part.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.  Further, because this memorandum
opinion has no precedential value, we recite only those facts
necessary to our holding.

We first note that "[i]n challenging the court's decision on appeal, the party seeking reversal bears the burden to demonstrate error on the part of the trial court."[1]  Further, when a trial court hears evidence ore tenus, as in this case, its findings based on an evaluation of the testimony are entitled to the same weight as a jury's verdict.[2]  Thus, the trial court's decision will be upheld unless it appears from the evidence that the judgment is plainly wrong or unsupported by the evidence.[3]

Here, the trial court relied upon Richardson v. Richardson, 10 Va. App. 391, 382 S.E.2d 688 (1990), in finding that the parties had, at least orally, reached an agreement, prior to wife's attempted revocation, settling the equitable distribution issues, as implied by their words, acts and conduct, evincing the intention of the parties to contract and their meeting of the minds.  Accordingly, the court held that the alleged revocation by wife was not effective, as the signing of the second property settlement agreement (PSA #2) by husband only served to memorialize the already existing contractual agreement and actions of the parties.  Finally, the court found the evidence failed to "establish any scintilla of duress in [wife's] execution and

---

[1] Barker v. Barker, 27 Va. App. 519, 535, 500 S.E.2d 240, 248 (1998) (citation omitted).

[2] RF&P Corp. v. Little, 247 Va. 309, 319, 440 S.E.2d 908, 915 (1994).

[3] Tuomala v. Regent Univ., 252 Va. 368, 374, 477 S.E.2d 501, 505 (1996).

-

signing of PSA #2, on October 15, 1998," nor any unconscionability on the part of husband in the formation of the agreement.

While it is true that "[s]eparation agreements and property settlement agreements are contracts" and as such, "'we must apply the same rules of interpretation applicable to contracts generally,'"[4] the Supreme Court of Virginia recently overruled Richardson, in relevant part, in Flanary v. Milton, 263 Va. 20, 556 S.E.2d 767 (2002). In Flanary, the Supreme Court held that pursuant to Code § 20-155, property settlement agreements made in conjunction with divorce proceedings must be made in writing and signed by both parties in order to be valid and enforceable.[5] Code § 20-155 states as follows:

> Married persons may enter into agreements with each other for the purpose of settling the rights and obligations of either or both of them, to the same extent, with the same effect, and subject to the same conditions, as provided in §§ 20-147 through 20-154 for agreements between prospective spouses, except that such marital agreements shall become effective immediately upon their execution. However, a reconciliation of the parties after the signing of a separation or property settlement agreement shall abrogate such agreement unless otherwise expressly set forth in the agreement.

---

[4] Douglas v. Hammett, 28 Va. App. 517, 523, 507 S.E.2d 98, 101 (1998) (quoting Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)).

[5] Flanary, 263 Va. at 24, 556 S.E.2d at 769.

-

Accordingly, to be enforceable, PSA #2 must have been signed by both parties.[6]  However, PSA #2 was not signed by both parties until February 4, 2000.  Thus, it did not become a binding agreement, pursuant to Code § 20-155, until that point in time.

Because the trial court assumed the agreement became enforceable before wife allegedly attempted to revoke the agreement, it made no factual or legal findings concerning the validity of wife's attempted revocation in the context of the then unsigned agreement.  Therefore, we reverse and remand on this issue for further findings by the trial court, consistent with this opinion.

We next address wife's argument concerning duress as it will undoubtedly be raised once again should the trial court hold that wife's alleged revocation was insufficient as a matter of law to invalidate the agreement.  We first note that "[w]hile corroboration of testimony is not a prerequisite for rescission of [an agreement] on the ground of duress, it is necessary that the testimony establishing duress be clear and convincing."[7]  In considering the issue of whether a parent had entered into a

_____

[6] The first property settlement agreement was signed only by wife, and undisputedly, was never acted upon by the parties. Further, wife's counsel altered the first agreement, creating PSA #2, which wife then signed and offered to husband. Accordingly, we do not address that agreement in this opinion.

[7] Jacobs v. Jacobs, 218 Va. 264, 267, 237 S.E.2d 124, 127 (1977).

-

permanent entrustment agreement under the influence of duress in

_Norfolk Div. of Soc. Servs. v. Unknown Father_, 2 Va. App. 420, 345

S.E.2d 533 (1986), we described duress as follows:

> "Duress . . . means that degree of
> constraint or danger, either actually
> inflicted or threatened and impending, which
> is sufficient in severity or in apprehension
> to overcome the mind and will of a person of
> ordinary firmness . . . .
>
>     *     *     *     *     *     *     *
>
> Duress may exist whether or not the threat
> is sufficient to overcome the mind of a man
> of ordinary courage, it being sufficient to
> constitute duress that one party to the
> transaction is prevented from exercising his
> free will by reason of threats made by the
> other and that the contract is obtained by
> reason of such fact. Unless these elements
> are present, however, duress does not
> exist. . . . Authorities are in accord that
> the threatened act must be wrongful to
> constitute duress."[8]

Wife contends that PSA #2 was the product of duress and,

therefore, is invalid and unenforceable. She argues that

husband's conduct in threatening her and her counsel during the

August 1997 meeting compelled her to sign PSA #2.[9] She further

contends that she was under a significant amount of anxiety during

---

[8] _Norfolk Div. of Soc. Serv._, 2 Va. App. at 434-35, 345 S.E.2d at 541 (quoting 6B Michie's Jurisprudence _Duress and Undue Influence_ §§ 2-3 (Repl. Vol. 1985)).

[9] On brief, wife repeatedly uses the words "treat" or "treats," instead of "threat" or "threats." Upon a review of the record, we assume wife's use of these words on brief is the result of her counsel's carelessness and/or failure to proofread the brief prior to filing, as opposed to a facially absurd argument that husband caused wife duress by making "treats."

that time, as well as pressure, due to her impending sentencing for the embezzlement conviction.  However, we find no merit in these contentions.

Indeed, the facts and circumstances of this case support the trial court's determination that duress did not contribute to wife's signing of PSA #2.  Wife signed PSA #2 well after her sentencing and incarceration, and well after husband's threat. Further, there was no evidence that any threatening or improper conduct on the part of husband continued after August of 1997, or in any way affected her decision to sign PSA #2 in October of 1998.  Thus, the evidence supported the trial court's conclusion on this issue.

For the foregoing reasons, we affirm in part and reverse and remand in part.

<u>Affirmed in part, and</u>
<u>reversed and remanded in part.</u>

-