Present: Kinser, C.J., Lemons, Millette, Mims, McClanahan, and Powell, JJ., and Koontz, S.J.

JILL DEMELLO HILL

OPINION BY
v. Record No. 111805   SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
June 7, 2012
FAIRFAX COUNTY SCHOOL BOARD

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Leslie M. Alden, Judge

In this appeal, we consider whether the circuit court correctly determined that certain exchanges of e-mails between members of a local school board did not constitute a "Meeting" within the meaning of Code § 2.2-3701 and, thus, did not violate the notice and open meeting requirements of the Virginia Freedom of Information Act (FOIA), Code § 2.2-3700 et seq. We further consider whether the court erred in concluding that because the citizen requesting information under the FOIA had not "substantially prevail[ed] on the merits of the case," Code § 2.2-3713(D), she was not entitled to an award of attorneys' fees and costs.

BACKGROUND

The material facts of this case are not in dispute and, despite a voluminous record, may be summarized briefly in order to address the dispositive issues in this appeal. On February 17, 2011, Jill DeMello Hill filed in the Circuit Court of Fairfax County a petition for a writ of mandamus

against the Fairfax County School Board. In her petition, Hill alleged that the Board had violated the FOIA since prior to a public meeting held on July 8, 2010 in which the Board voted to close Clifton Elementary School, various members of the Board conducted an unlawful closed meeting to discuss the closure of that local school principally through an exchange of e-mails. Hill further alleged that the Board had violated the FOIA by denying her access to certain public records pertaining to the closure of Clifton Elementary by failing to provide those records in a timely and efficient manner, failing to provide full disclosure of those records, and/or without justification redacting parts of the records supplied to her.

In her prayer for relief, Hill sought a mandate that the Board be required to provide all of the requested documents that it had not yet provided to her and to provide unredacted versions to the circuit court for an in camera review of those documents that the Board maintained were exempt from disclosure. She further sought to require the Board to make all the requested documents available to the public for inspection and then for the Board to conduct a public meeting to revisit the issue of whether to close Clifton Elementary. Hill also sought an award of attorneys' fees and costs pursuant to Code § 2.2-3713(D).

2

On March 1, 2011, the Board filed an answer to Hill's mandamus action and expressly denied that "any meetings under [the FOIA] were conducted by e-mail." The Board further denied that it had improperly withheld or redacted any documents that were subject to disclosure under the FOIA. The Board asserted that Hill had failed to state adequate grounds for invalidating the July 8, 2010 public meeting and the vote to close Clifton Elementary, and that her claim for attorneys' fees and costs should be denied.

Prior to the filing of the mandamus action, the Board had provided a significant number of documents, primarily in the form of e-mails exchanged by various members of the Board, in response to Hill's FOIA request. By order of the circuit court, the Board further provided additional documents to Hill or to the court for in camera review in the course of the mandamus proceeding. These documents served as the principal basis for Hill's assertion that the Board had conducted an improper closed meeting to discuss the closure of Clifton Elementary prior to the July 8, 2010 public meeting. While several of the e-mails predated the public meeting by as much as three months, the majority were sent several days prior to or on July 8, 2010.

The circuit court received these documents into evidence along with the testimony of numerous witnesses at an ore tenus

3

hearing held March 2 and 3, 2011.  The evidence showed that in addition to the e-mail exchanges, various Board members also communicated by telephone and in person in the days preceding the July 8, 2010 public meeting.

On July 13, 2011, the circuit court issued a comprehensive opinion letter that was incorporated by reference in an order of final judgment denying mandamus relief to Hill.  As relevant to the issues raised in this appeal, the court expressly found that the exchange of e-mails by the members of the Board did not constitute a meeting of the Board for purposes of the FOIA because they did not involve sufficient simultaneity and did not result in any group consensus or discussion of business by any three members of the Board outside the context of a public meeting.  Thus, the court found that Hill had not established that she was entitled to the mandamus relief of requiring the Board to annul its prior decision to close Clifton Elementary and to revisit the matter.

The circuit court further found that while the Board had violated the FOIA by its unreasonable delay in responding to Hill's initial request for electronic copies of certain documents, and by not releasing five documents that were not subject to an exemption until ordered to do so by the court, "the violations, although frustrating and vexing, ultimately

4

[were] de minimis" especially as Hill had received all the documents she had requested prior to the ore tenus hearing. Accordingly, the court concluded that Hill had not substantially prevailed on her FOIA challenge and, thus, was not entitled to attorneys' fees and costs.

We awarded Hill an appeal to consider the following assignments of error:

> The trial court committed reversible error by holding that the [Fairfax County School Board] did not violate the FOIA's Open Meeting requirements when its members engaged in deliberations whether to close Clifton Elementary School via multiple conversations and dozens of e-mail communications in advance of the formal public meeting.

> The trial court committed reversible error by denying Petitioner's request for costs and attorneys' fees notwithstanding the court's holding that the [Fairfax County School Board] committed multiple violations of the FOIA.

## DISCUSSION

Our resolution of Hill's first assignment of error is guided by our decision in Beck v. Shelton, 267 Va. 482, 593 S.E.2d 195 (2004). In Beck, we recognized that

> [i]ndisputably, the use of computers for textual communication has become commonplace around the world. It can involve communication that is functionally similar to a letter sent by ordinary mail, courier, or facsimile transmission. In this respect, there may be significant delay before the communication is received and additional delay in response. However, computers can be utilized to exchange text in the nature of a discussion, potentially involving multiple participants, in what are euphemistically called "chat rooms" or by

5

"instant messaging." In these forms, computer
generated communication is virtually simultaneous.

267 Va. at 489, 593 S.E.2d at 198.

In the intervening eight years between <u>Beck</u> and the present case, information technology has advanced even further. Real-time audio and visual communications over Internet-connected computers between two, three, or even more parties is now commonplace. Moreover, the increased prevalence of "smartphones" and other mobile Internet-connected devices has increased both the ability to access all forms of electronic communication and the rapidity with which a response can be sent. Nonetheless, the inquiry to be made by the trier of fact remains the same as set forth in <u>Beck</u>, which is whether a series of electronic communications of whatever type constitutes a meeting of a public body for purposes of applying the FOIA.

The FOIA, in relevant part, defines a "Meeting" as "an informal assemblage of (i) as many as three members or (ii) a quorum, if less than three, of the constituent membership . . . of any public body." Code § 2.2-3701. In <u>Beck</u>, we stated that

> "assemble" means "to bring together" and comes from
> the Latin <u>simul</u>, meaning "together, at the same
> time." <u>Webster's Third New International Dictionary</u>
> 131 (1993). The term inherently entails the quality
> of simultaneity. While such simultaneity may be
> present when e-mail technology is used in a "chat

6

room" or as "instant messaging," it is not present when e-mail is used as the functional equivalent of letter communication by ordinary mail, courier, or facsimile transmission.

267 Va. at 490, 593 S.E.2d at 199 (footnote omitted). We further noted that the legislature "anticipated that some electronic communication may constitute a 'meeting' and some may not." Id. at 491, 593 S.E.2d at 199. (citing Code § 2.2-3710(B)). Thus, "the key difference between permitted use of electronic communication, such as e-mail, outside the notice and open meeting requirements of [the] FOIA, and those that constitute a 'meeting' under [the] FOIA, is the feature of simultaneity inherent in the term 'assemblage.' " Id. Thus, as we explained in Beck, the dispositive inquiry to be made by the trier of fact is "how the e-mail is used." Id. at 489, 593 S.E.2d at 199 (internal quotation marks omitted).

Hill contends that unlike Beck, where we held that the exchanges of e-mails in question were " 'essentially a form of written communication,' " like letters or facsimile transmissions and, thus, lacked the necessary element of simultaneity, id. at 491, 593 S.E.2d at 200 (quoting 1999 Op. Atty. Gen. 12, 13), the e-mails between the Board members in this case were in the nature of an ongoing discussion involving multiple participants. On brief, citing the "sheer volume of e-mails during a compressed time period," Hill

7

contends that the evidence demonstrated the Board's "reliance on[] using e-mail as a primary means to communicate." Hill further contends that "[c]onsidering the time it takes to receive an e-mail, read it, draft a response and send it, it is difficult to fathom e-mail exchanges that would better meet the simultaneity requirement" than those at issue in this case. Thus, she maintains that the circuit court was plainly wrong in finding that the e-mails did not constitute an assemblage of at least three members of the Board constituting an improper closed meeting in violation of Code § 2.2-3708. We disagree.

Hill concedes that while the circuit court's interpretation of the FOIA is subject to de novo review, its findings of fact to which it applies that interpretation can be overturned only if plainly wrong or without support in the evidence. See, e.g., RF&P Corp. v. Little, 247 Va. 309, 319, 440 S.E.2d 908, 915 (1994). The circuit court's interpretation of the FOIA in this case is entirely consistent with Beck. Accordingly, we review the evidence as a whole to determine whether the court's factual finding that the communications among the Board members did not constitute an "assemblage" under the FOIA was plainly wrong.

The circuit court's finding that no improper meeting of the Board had occurred was premised on multiple grounds

including express findings that "[a]lthough the e-mails in the present case were sent in much shorter intervals than the e-mails sent in Beck, the e-mails sent by the Board members did not involve sufficient simultaneity to constitute a meeting," that "the Board [member]'s e-mails that involved some sort of back-and-forth exchange were between only two members at a time, rather than the three required," and that "e-mails sent to more than two Board members" whether directly, by carbon copy, or by forwarding, "conveyed information unilaterally, in the manner of an office memorandum."[*]  Thus, the court concluded that "[t]hese messages did not generate group conversations or responses with multiple recipients."

The circuit court's factual findings are a reasonable interpretation of the evidence regarding how the e-mails were used.  The circuit court's findings establish that the feature of simultaneity inherent in the term assemblage is not established in this case.  Accordingly, we cannot say that the

---

[*] The record contains only one e-mail sent from one board member directly to two others.  This e-mail was the last reply in an exchange of several e-mails in which the sender merely suggested in jest that they all "need[ed] to go on a long vacation."  More typical of e-mails that involved multiple school board members directly were those sent to the entire board and staff members discussing changes to the agenda of the public meeting.  Many of the e-mails sent during this time were not related to the closure of Clifton Elementary at all, but instead dealt with other issues or were purely personal in nature.

9

court's judgment that there had been no violation of Code § 2.2-3708 was plainly wrong or without support in the evidence. We therefore hold that the court did not err in determining that the Board had not conducted an improper closed meeting in violation of the notice and open meeting requirements of the FOIA.

We now turn to Hill's second assignment of error asserting that the circuit court erred in failing to award her attorneys' fees and costs notwithstanding its finding that the Board committed "multiple" violations of the FOIA in response to her original request for documents related to the closure of Clifton Elementary. Code § 2.2-3713(D) provides for an award of "reasonable costs . . . and attorneys' fees" when a party "substantially prevails on the merits of the case, unless special circumstances would make an award unjust." The issue before us then is whether Hill substantially prevailed on the merits of her case.

The circuit court expressly found that "Hill did not substantially prevail on the merits of her case." This was so, the court reasoned, because "[t]he gravamen of [Hill's] claim, that the Board met secretly by e-mail and that the decision to close [Clifton Elementary] should be set aside, was rejected by the Court."

10

As used in Code § 2.2-3713(D), "the merits of the case" plainly refers to the object of the action in which a claim that the FOIA has been violated is made, and that the party has prevailed in proving that there was some violation of the FOIA by the public body.  See, e.g., Fenter v. Norfolk Airport Auth., 274 Va. 524, 532, 649 S.E.2d 704, 709 (2007); White Dog Publ'g, Inc. v. Culpeper Bd. of Sup., 272 Va. 377, 387-88, 634 S.E.2d 334, 340 (2006).  If the purpose of the action is merely to force compliance with the FOIA by requiring the public body to produce the requested documents, then a finding by the trial court that some documents were wrongfully withheld may satisfy the statute's requirement that the party "substantially prevails on the merits."  See RF&P Corp., 247 Va. at 323 n.5, 440 S.E.2d at 917 n.5 (holding that a party "was required to show that he substantially prevailed on the merits of the case, not that he prevailed on every issue he raised").  In this case, however, the circuit court correctly noted that the object of Hill's mandamus petition was not to obtain the small number of documents that the court found should have been disclosed.  Nor was it to establish that the Board had failed to supply these documents in a timely and efficient manner.  Rather, the principal purpose of Hill's petition was to overturn the result of the Board's July 8, 2010 decision to close Clifton Elementary.  As she did not

11

prevail on that issue, we hold that the court did not err in denying her request for attorneys' fees and costs.

CONCLUSION

For these reasons, we will affirm the judgment of the circuit court denying mandamus relief to Hill and further finding that she was not entitled to an award of attorneys' fees and costs under the FOIA.

Affirmed.