COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Malveaux and Callins
Argued by videoconference


THOMAS A. BLACKSTOCK, JR.

                                                            OPINION BY
v.        Record No. 0343-24-2              JUDGE DOMINIQUE A. CALLINS
                                                            MARCH 25, 2025

VIRGINIA DEPARTMENT OF TRANSPORTATION


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Richard F. Hawkins, III (The Hawkins Law Firm, PC, on briefs),
for appellant.

Meredith L. Baker, Assistant Solicitor General (Jason S. Miyares,
Attorney General; Thomas J. Sanford, Deputy Attorney General;
Graham K. Bryant, Deputy Solicitor General, on brief), for
appellee.


In this Virginia Freedom of Information Act ("VFOIA") case, Thomas Blackstock

appeals the circuit court's judgment denying his petition for a writ of mandamus to have the

Virginia Department of Transportation ("VDOT") provide him with an unredacted copy of a

report created by VDOT's internal auditor after investigating a hiring decision made by a VDOT

employee.  On appeal, Blackstock argues that the circuit court erred in finding that VDOT did

not waive its reliance on VFOIA's investigations exemption under Code § 2.2-3705.3(7) and

further erred in finding that VDOT sufficiently proved that its redactions to the report were

proper under Code § 2.2-3705.3(7).  For the following reasons, we affirm the circuit court's

judgment.

PUBLISHED

BACKGROUND

In early 2020, Blackstock worked as an Assistant Division Administrator in VDOT's Human Resources ("HR") Division, a role that required him to review new hiring actions to ensure that they complied with VDOT and Commonwealth guidelines. Around that time, Blackstock reviewed a proposed hiring action that he thought was "highly irregular" because it was a direct hire of a friend or relative of VDOT's HR Director, rather than a hire done through a standard competitive hiring process. Blackstock raised his concerns with the VDOT Commissioner, who instructed Blackstock not to approve the hire. According to Blackstock, VDOT's HR Director was "furious" at Blackstock for this, "chastised [him]," and "began retaliating against him." In response, Blackstock initiated a grievance proceeding against VDOT requesting that VDOT review whether the proposed hiring action was consistent with agency guidance and standard practices. VDOT's internal auditor, the Assurance and Compliance Office ("ACO"), conducted an audit of the hiring action and issued a report (the "Audit Report") summarizing its findings and conclusions.

After learning of the existence of the Audit Report, Blackstock requested it as part of the evidence-gathering process of his grievance proceeding. After twice unsuccessfully challenging a hearing officer's decision ordering VDOT to produce the Audit Report, VDOT provided Blackstock with a heavily redacted version of the report that Blackstock described as being "utterly useless." Blackstock subsequently withdrew his grievance, but he attempted again in January 2022 to obtain an unredacted copy of the Audit Report under VFOIA. In response, VDOT provided Blackstock with a second copy of the Audit Report that contained the same redactions as before. In an email from a VDOT employee responding to Blackstock's VFOIA request, VDOT stated that "portions of the record you have requested relate to personnel information and investigations and are exempt from disclosure pursuant to §§ 2.2-3705.1(1) and

2.2-3705.3(7) of the Code of Virginia. Therefore, these portions have been redacted from the records being released to you."

After retiring from VDOT, Blackstock attempted for a third time in January 2023 to obtain an unredacted copy of the Audit Report, now citing the Supreme Court of Virginia's decision in *Hawkins v. Town of South Hill*, 301 Va. 416 (2022), which narrowed the scope of VFOIA's personnel-information exemption under Code § 2.2-3705.1(1). In an email, Amanda Haley, VDOT's Assistant Division Administrator of HR, responded to Blackstock that "in keeping with the definition of 'personnel information' set forth in *Hawkins* . . . [a]ttached, please find the record you requested, which is provided with appropriate redaction of personnel information concerning identifiable individuals pursuant to § 2.2-3705.1." This third copy of the Audit Report revealed that the ACO had determined that the subject of the ACO's investigation had acted inconsistently with Commonwealth policy and that the ACO had recommended that corrective action be taken. Blackstock acknowledged that this copy of the Audit Report was "much less redacted" than before, but he observed that "certain names and information" were still redacted, and he maintained that he was entitled to an unredacted copy of the report under VFOIA.

To that end, Blackstock filed a petition for mandamus with the circuit court asking the court to order VDOT to provide him with an unredacted copy of the Audit Report. VDOT responded with a demurrer and motion to dismiss. At a subsequent hearing, Blackstock challenged VDOT's reliance on the personnel-information exemption under Code § 2.2-3705.1(1) and also argued that VDOT waived any reliance on the investigations exemption under Code § 2.2-3705.3(7) because VDOT did not specifically invoke that exemption in response to Blackstock's third request for the Audit Report. During the hearing, Haley testified to her involvement in the case and explained that the redactions she made to the Audit Report in

- 3 -

response to Blackstock's third request consisted of the names and job titles of the subject of the

investigation and persons supplying information as part of the investigation. She testified that no

corrective action was ultimately taken against the subject of the investigation and that she knew

this because of her role in VDOT working on disciplinary matters statewide and by confirming

directly with the VDOT Commissioner. She also testified that the subject of the investigation

had not consented to the release of his or her identity. Finally, she testified that she understood

Blackstock's third request to be part of a continuing VFOIA request and that her response was an

amendment to VDOT's response to his prior initial request.

After reviewing an unredacted version of the Audit Report in camera, the circuit court

issued a letter opinion and order denying Blackstock's petition for mandamus. The circuit court

first found that the redacted information in the third copy of the Audit Report could not be

excluded pursuant to the personnel-information exemption under Code § 2.2-3705.1(1).[1]

Nevertheless, the circuit court found that the redacted information was properly excluded

pursuant to the investigations exemption under Code § 2.2-3705.3(7). In reaching this

conclusion, the circuit court first found that VDOT had not waived any reliance on the

investigations exemption because its response to Blackstock's third request for the Audit Report

was "part of cumulative and ongoing correspondence regarding the same Report." The circuit

court next pointed to a provision in Code § 2.2-3705.3(7) stating:

> *Information contained in completed investigations shall be
> disclosed in a form that does not reveal the identity of the
> complainants or persons supplying information to investigators*.
> Unless disclosure is excluded by this subdivision, the information
> disclosed shall include the agency involved, the identity of the
> person who is the subject of the complaint, the nature of the
> complaint, and the actions taken to resolve the complaint. *If an
> investigation does not lead to corrective action, the identity of the
> person who is the subject of the complaint may be released only
> with the consent of the subject person.*

---

[1] Blackstock does not challenge this ruling on appeal.

Code § 2.2-3705.3(7) (emphases added). Based on this provision, the circuit court found that the redactions to the Audit Report were proper under VFOIA because (1) the redacted information would reveal the identity of the subject of the ACO's investigation and persons supplying information as part of the investigation, and (2) as testified to by Haley, no corrective action was taken against the subject of the investigation, and the subject did not consent to the release of his or her identity. The circuit court thus concluded that VDOT "sufficiently carried its burden to prove by a preponderance of the evidence that the redacted portions of the Report are protected from disclosure" under Code § 2.2-3705.3(7). Blackstock now appeals this ruling.

ANALYSIS

On appeal, Blackstock argues that the circuit court erred in finding that VDOT did not waive its reliance on the investigations exemption under Code § 2.2-3705.3(7) and further erred in finding that VDOT sufficiently proved that its redactions to the Audit Report were proper under Code § 2.2-3705.3(7). Blackstock asserts that he made three separate, independent requests for the Audit Report and that VDOT waived any reliance on the investigations exemption because VDOT specifically invoked this exemption only in response to his second request, not his third one. Blackstock also asserts that Haley's testimony regarding her knowledge of the events surrounding the ACO's investigation was insufficient to prove that the subject of the investigation did not receive corrective action and did not consent to the release of his or her identity. Blackstock thus contends that the circuit court was plainly wrong in finding that VDOT's redactions to the Audit Report were proper under Code § 2.2-3705.3(7).

Generally, "[w]hether documents . . . should be excluded under [VFOIA] is a mixed question of law and fact." *Hawkins v. Town of S. Hill*, 301 Va. 416, 424 (2022) (second alteration in original) (quoting *Va. Dep't of Corr. v. Surovell*, 290 Va. 255, 262 (2015)). "To the extent that the proper application of VFOIA's requirements turns on the specific facts of the

case, we owe deference to the trial court's factual findings unless 'they are "plainly wrong or without evidence to support [them]."'" *Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 205 (2023) (alteration in original) (citation omitted) (quoting *Grayson v. Westwood Bldgs., L.P.*, 300 Va. 25, 58 (2021)). "[W]e give deference to the trial court's factual findings and view the facts in the light most favorable to the prevailing part[y]." *Hawkins*, 301 Va. at 424 (alterations in original) (quoting *Surovell*, 290 Va. at 262). When a "trial court reache[s] [a] conclusion based upon evidence heard 'ore tenus, its findings based on an evaluation of the testimony are entitled to the same weight as those of a jury.'" *Wahlstrom*, 302 Va. at 223 (quoting *RF&P Corp. v. Little*, 247 Va. 309, 319 (1994)). In its role as factfinder, "'the trial court [is] the judge of the credibility of the witnesses[,]' and thus, we defer to its credibility determinations." *Id.* (second alteration in original) (quoting *Little*, 247 Va. at 321).

On the other hand, interpreting "the meaning of specific provisions of VFOIA . . . present[s] questions of law subject to de novo review" on appeal. *Id.* at 204. "In construing statutory language, we are bound by the plain meaning of clear and unambiguous language." *Hawkins*, 301 Va. at 425 (quoting *White Dog Publ'g, Inc. v. Culpeper Cnty. Bd. of Supervisors*, 272 Va. 377, 386 (2015)). "When construing a statute, our primary objective is to ascertain and give effect to legislative intent, as expressed by the language used in the statute." *Va. Elec. & Power Co. v. State Corp. Comm'n*, 300 Va. 153, 161 (2021) (quoting *Va. Elec. & Power Co. v. State Corp. Comm'n*, 295 Va. 256, 262-63 (2018)). "In doing so, we 'consider the entire statute "to place its terms in context"' because it is 'our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.'" *Id.* (citations omitted) (quoting *REVI, LLC v. Chi. Title Ins. Co.*, 290 Va. 203, 208 (2015)). "[T]he various parts of the statute should be harmonized so that, if practicable, each is given a sensible and intelligent effect." *Ford Motor Co. v. Gordon*, 281 Va. 543, 549-50 (2011) (quoting *Oraee v.*

*Breeding*, 270 Va. 488, 498 (2005)). "Where a statute includes a general provision with broad terms and a specific provision with narrow terms, the latter qualifies the former." *Appalachian Power Co. v. State Corp. Comm'n*, 301 Va. 257, 287 (2022).

"The General Assembly enacted [VFOIA] . . . to 'ensure[] the people of the Commonwealth ready access to public records in the custody of a public body or its officers and employees, and free entry to meetings of public bodies wherein the business of the people is being conducted." *Citizens for Fauquier Cnty. v. Town of Warrenton*, 81 Va. App. 363, 374-75 (2024) (third alteration in original) (quoting Code § 2.2-3700(B)). "[P]ublic bodies must produce requested records in redacted format if the record contains both exempt and non-exempt information unless the statutory exemption 'applies to the entire content of the public record.'" *Id.* (quoting Code § 2.2-3704.01).

When a member of the public makes a VFOIA request to a public body of the Commonwealth and that public body intends to withhold certain information pursuant to one of VFOIA's discretionary exemptions to disclosure, the general rule is that:

> Unless a public body or its officers or employees specifically elect to exercise an exemption provided by [VFOIA] or any other statute, every meeting shall be open to the public and all public records shall be available for inspection and copying upon request. All public records and meetings shall be presumed open, unless an exemption is properly invoked.

Code § 2.2-3700(B). In turn, Code § 2.2-3705.3 elaborates on this general rule in a provision at the beginning of this section, which states: "The following information contained in a public record is excluded from the mandatory disclosure provisions of [VFOIA] but may be disclosed by the custodian in his discretion, except where such disclosure is prohibited by law."[2] This

---

[2] Each of VFOIA's discretionary disclosure exemptions in Code §§ 2.2-3705.1 to -3705.7 contains a provision at the beginning of these sections forbidding the disclosure of information where such disclosure is prohibited by law.

provision makes clear that a public body has no discretion to release information "where such disclosure is prohibited by law," and thus the public body cannot legally waive any such mandatory non-disclosure requirement—notwithstanding the general waiver rule under Code § 2.2-3700(B). Recognizing the distinction between information that may be released by a public body in its discretion and information that is prohibited by law from disclosure, we turn now to the text of Code § 2.2-3705.3(7).

Code § 2.2-3705.3(7) first states, in relevant part, that the following information is excluded from the mandatory disclosure provisions of VFOIA but may be released by a public body in its discretion: "Investigative notes, correspondence and information furnished in confidence, and records otherwise exempted by [VFOIA] or any Virginia statute, provided to or produced by or for . . . internal auditors appointed by the head of a state agency." The statute goes on to state, however, that:

> *Information contained in completed investigations shall be disclosed in a form that does not reveal the identity of the complainants or persons supplying information to investigators.* Unless disclosure is excluded by this subdivision, the information disclosed shall include the agency involved, the identity of the person who is the subject of the complaint, the nature of the complaint, and the actions taken to resolve the complaint. *If an investigation does not lead to corrective action, the identity of the person who is the subject of the complaint may be released only with the consent of the subject person.*

Code § 2.2-3705.3(7) (emphases added). Properly understood, this provision—by using the phrases "shall be disclosed in a form that does not" and "may be released only with"—creates two mandatory legal prohibitions from disclosure under VFOIA: (1) disclosure of information contained in completed investigations that would reveal the identity of the complainants or persons supplying information to investigators, and (2) disclosure of the identity of the person who is the subject of a complaint if an investigation does not lead to corrective action and the

- 8 -

subject does not consent to the release of his or her identity.[3] *See Citizens for Fauquier*, 81 Va. App. at 382 ("[E]very provision in or part of a statute shall be given effect if possible." (quoting *Va. Elec. & Power Co.*, 300 Va. at 163)).

Since the disclosure of this information is prohibited by law under Code § 2.2-3705.3(7) in these particular circumstances, a public body has no discretion to release such information and thus cannot waive this legal requirement by not specifically invoking Code § 2.2-3705.3(7) in response to a VFOIA request. As such, even if we assumed that VDOT waived any reliance on the investigations exemption by not specifically invoking this exemption in response to Blackstock's third request for the Audit Report, such failure would, at most, only constitute a waiver generally preventing VDOT from withholding "[i]nvestigative notes, correspondence and information furnished in confidence, and records otherwise exempted by [VFOIA] or any Virginia statute, provided to or produced by or for" the ACO. Code § 2.2-3705.3(7). Such failure by VDOT would not constitute a waiver of Code § 2.2-3705.3(7)'s mandatory non-disclosure requirements, and VDOT would still be legally required to withhold any information that is prohibited by law from disclosure under this subdivision. *Cf. Basey v. Dep't of Pub. Safety, Div. of Alaska State Troopers, Bureau of Investigations*, 462 P.3d 529, 533 (Alaska 2020) ("Holding that an agency has waived the right to assert a discretionary disclosure exemption is a very different matter from holding that an agency cannot assert its duty to comply with a state law.").

---

[3] VFOIA contains several of these kinds of legal prohibitions protecting certain types of information from disclosure under specific circumstances. *See, e.g.*, Code § 2.2-3705.2(5) ("[I]n no case shall information identifying the victims of a sexually violent predator be disclosed."); Code § 2.2-3705.4(8) ("The public body . . . shall remove personally identifying information of any person who provided information to the threat assessment team under a promise of confidentiality.").

Accordingly, the only remaining issue to address is whether VDOT sufficiently proved that its redactions to the Audit Report were proper under Code § 2.2-3705.3(7)'s mandatory non-disclosure requirements. *See* Code § 2.2-3713(E) ("In any action to enforce the provisions of [VFOIA], the public body shall bear the burden of proof to establish an exclusion by a preponderance of the evidence."). Here, the only information that VDOT redacted from the Audit Report in response to Blackstock's third request were the names and job titles of the subject of the ACO's investigation and persons supplying information as part of the investigation. Further, Haley testified that, based on her role in VDOT working on disciplinary matters statewide and by confirming with the VDOT Commissioner, she knew that the subject of the investigation did not receive corrective action, and she also knew that the subject did not consent to the release of his or her identity. The circuit court, in its role as factfinder, credited Haley's testimony in concluding that VDOT sufficiently met its burden of proof—a credibility determination that was reasonable and is owed deference by this Court on appeal. Ultimately, the circuit court's conclusion was not plainly wrong or without evidence to support it, and we therefore hold that VDOT properly redacted the Audit Report pursuant to Code § 2.2-3705.3(7)'s mandatory non-disclosure requirements. Thus, the circuit court did not err in denying Blackstock's petition for mandamus.[4] *See Lawrence v. Jenkins*, 258 Va. 598, 603 (1999) (holding that the petitioner for mandamus "received all the information he was entitled to receive under [V]FOIA," and as such, "mandamus was not an appropriate remedy").

---

[4] Blackstock has requested this Court to award him his attorney fees incurred in bringing this appeal. *See* Code § 2.2-3713(D) ("If the court finds the denial [of the rights and privileges conferred by VFOIA] to be in violation of the provisions of [VFOIA], the petitioner shall be entitled to recover reasonable costs, including costs and reasonable fees for expert witnesses, and attorney fees from the public body if the petitioner substantially prevails on the merits of the case."); *see also* Rule 5A:30(b). Since Blackstock's petition for mandamus was correctly denied by the circuit court, he is not entitled to attorney fees under VFOIA, and we also decline to award him attorney fees under Rule 5A:30(b).

- 10 -

CONCLUSION

For the foregoing reasons, the circuit court's judgment denying Blackstock's petition for mandamus under VFOIA is affirmed.

*Affirmed.*