PRESENT:  All the Justices

TRANSPARENT GMU, ET AL.

v.  Record No. 181375

OPINION BY
JUSTICE CLEO E. POWELL
December 12, 2019

GEORGE MASON UNIVERSITY, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

Transparent GMU and Augustus Thomson (collectively, "Transparent") appeal from the

judgment of the Circuit Court of Fairfax County ("circuit court") dismissing with prejudice its

first amended verified petition for writ of mandamus.  Transparent sought to obtain donor

information under the Virginia Freedom of Information Act ("VFOIA"), Code §§ 2.2-3700 *et*

*seq*., from George Mason University ("GMU") and the George Mason University Foundation,

Inc. ("the Foundation").  The questions before us on appeal involve whether the Foundation, a

privately held corporation, established to raise funds and manage donations given for the benefit

of GMU, is subject to VFOIA.  We conclude that the Foundation's records are not subject to

disclosure under VFOIA.

I.  BACKGROUND

A.  History of GMU

In 1949, an exploratory committee, in conjunction with the University of Virginia

("UVA"), was formed to assist in creating a demand for higher education in Northern Virginia.

In 1955, UVA's Board of Visitors approved the establishment of a branch college to serve

Northern Virginia.  The General Assembly thereafter enacted legislation establishing the George

Mason College of the University of Virginia ("the College") "subject to the supervision,

management, and control of the [UVA] Rector and Visitors." 1959 Acts ch. 60 [H 59] (Apr. 27, 1959).

The College opened in Fairfax County as a two-year institution in 1964. Due to the rapidly increasing population in Northern Virginia, UVA requested that the General Assembly authorize the College's expansion into a four-year institution. In 1966, the General Assembly approved the request and the College became a four-year degree-granting institution while remaining under UVA's direction. 1966 Acts ch. 68 [H33] (Mar. 1, 1966).

In 1972, George Mason University officially separated from UVA and became its own public institution of higher education. 1972 Acts ch. 550 [H210] (Apr. 7, 1972). The General Assembly included GMU in the Code as an "educational institution[]" and "public [body] . . . as [a] governmental instrumentalit[y] for the dissemination of education." Code § 23-14 (now Code § 23.1-1101).

Today, GMU continues to operate as a public institution of higher education and is managed by a board of visitors whose members are appointed by the Governor. Code §§ 23.1-1500, -1501. In addition to conferring degrees and managing GMU's academic programming, "[t]he board shall appoint all teachers, staff members, and agents and fix their salaries and generally direct the affairs of [GMU]." Code § 23.1-1503(A). The General Assembly encourages all of the Commonwealth's public institutions of higher education "to increase their endowment funds and unrestricted gifts from private sources and reduce the hesitation of prospective donors to make contributions and unrestricted gifts." Code § 23.1-101(1). As relevant to the issues before us in this case, each public institution of higher education is further authorized by the General Assembly to "[c]reate or continue the existence of one or more nonprofit entities for the purpose of soliciting, accepting, managing, and

2

administering grants and gifts and bequests, including endowment gifts and bequests and gifts and bequests in trust."  Code § 23.1-1010(3).

B.  History of the Foundation

The George Mason College Foundation, Inc. ("College Foundation") was incorporated by three local businessmen and members of the College's Advisory Committee in February 1966, just prior to the General Assembly's acceptance of the College as a four-year degree granting branch of UVA.  The College Foundation's Articles of Incorporation listed the three men as members of the initial Board of Trustees who would manage the College Foundation during its first year of operation.  The College Foundation's stated purposes of accepting gifts and donations was "exclusively educational and charitable."  The College Foundation was "operated exclusively to receive, hold, invest and administer property and to make expenditures to or for the benefit of [the College]."  In addition, the College Foundation "promote[d] the advancement and further[ed] the aims and purposes of [the College] . . . as an institution of higher education by the development and application of financial resources."  The Board of Trustees approved Bylaws for the College Foundation in November 1966.

Two years after the creation of GMU, in 1974, the George Mason College Foundation officially changed its name to "The George Mason University Foundation, Inc."  On October 30, 1991, Articles of Incorporation signed by Carrington Williams created "The George Mason University Educational Foundation, Inc." ("Educational Foundation").[1]  These Articles of Incorporation gave the Educational Foundation the authority to issue 1,000 shares of common stock to the George Mason University Foundation.

---

[1] Carrington Williams was a member of the Board of Trustees of the George Mason University Foundation but had no known affiliation with GMU.

3

On July 1, 1992, the George Mason University Foundation transferred over $21 million in assets to the Educational Foundation in exchange for all of the Educational Foundation's shares of stock. This transfer represented all of the George Mason University Foundation's assets other than the telecommunications assets of Capitol Connection and F Corporation. The George Mason University Foundation became "The George Mason University Instructional Foundation, Inc." in August 1993. In October 1993, the Educational Foundation was renamed to The George Mason University Foundation, Inc. (the current Foundation).

Today, the Foundation continues to operate as a private non-stock corporation organized under the laws of Virginia. The Foundation and GMU regularly enter into a series of contractual arrangements, one of which is the Affiliation Agreement. The Affiliation Agreement governs the relationship between GMU and the Foundation wherein they "acknowledge that each is an independent entity." The Affiliation Agreement also provides that "[GMU] recognizes that the Foundation is a private corporation with the authority and obligations to keep all records and data confidential with the requirements of law." The Affiliation Agreement confirms the Foundation's purpose as caretaker and manager of funds from private donors intended to benefit GMU, in accordance with the intent of those donors. GMU also acknowledges that the Foundation controls the decision of whether to accept or reject donor gifts.

C. Circuit Court Proceedings

On April 5, 2017, Transparent filed VFOIA requests with GMU and the Foundation seeking the following:

> For the years of 2008 through 2012, any grants, cooperative agreements, gift agreements, contracts, or memoranda of understanding (including any attachments thereto) involving a contribution to or for [GMU] from any of [several charitable foundations under Charles Koch, Claude R. Lambe, and David Koch].

4

GMU responded that it did not have any of the requested records in its possession. The Foundation responded that it was not a public body and its records were not public records subject to VFOIA.

Transparent thereafter filed a verified petition for mandamus, injunctive, and declaratory relief ("original petition") against GMU and the Foundation. Among the theories for relief, Transparent asserted that "[a]s an alter-ego of [GMU], the Foundation must be considered a public body subject to [VFOIA], and the Foundation and/or [GMU] therefore denied [Transparent] their rights under [VFOIA] by failing to adequately process their request." Transparent claimed that GMU delegated "important public functions" to the Foundation and GMU "continues to exercise control over these functions," including establishing policies for the Foundation's acceptance of gifts and fund disbursement, providing the salary for the Foundation's president and Chief Executive Officer, and requiring the Foundation to consult with GMU "regarding the Foundation's fund-raising and donor acquisition programs and the Foundation's gift management and gift acceptance policies." Transparent further alleged that "at all relevant times, [GMU] and the Foundation have acted as a single entity," and that GMU's employment of the Foundation as an alter-ego denied their VFOIA rights.

GMU and the Foundation demurred to Transparent's alter-ego theory, contending that Transparent failed to allege that the Foundation "was a device or sham used to disguise wrongs, obscure fraud, or conceal crime" to "pierce the corporate veil." The circuit court sustained the demurrer to the alter-ego theory and granted Transparent leave to amend its remaining claims.

Transparent next filed a verified first amended petition for mandamus relief ("amended petition"), alleging two counts against GMU and three counts against the Foundation. Transparent alleged that:

5

[Count] I: [GMU] denied [Transparent] their rights under the Act by refusing to search for and provide requested records as the legal custodian of records held by its agent, the Foundation, in the transaction of public business.

[Count] II: [GMU] denied [Transparent] their rights under the Act by refusing to search for and provide requested records as the legal custodian of records possessed and/or used in the transaction of public business by Dr. Janet E. Bingham, an officer, employee, and/or agent of the University.

[Count] III: As an entity created to perform delegated functions of [GMU] and/or to advise [GMU], the Foundation is a public body subject to the Act and therefore denied the Petitioners their rights under the Act by failing to respond to their records request.

[Count] IV: As a corporation supported principally by public funds, the Foundation is a public body subject to the Act and therefore denied [Transparent] their rights under the Act by failing to respond to their records request.

[Count] V: The Foundation denied [Transparent] their rights and privileges under the Act because the requested records are public records, which the Foundation must ensure are open to inspection and copying regardless of its status as a public body.

The Foundation and GMU filed demurrers and GMU filed a plea in bar of sovereign immunity. The Foundation argued that only public entities are subject to VFOIA, regardless of whether the records requested are public records. GMU argued that it was not required to obtain records never in its possession.

The circuit court entered a memorandum opinion and order sustaining GMU's plea in bar against Counts I and II, and sustaining the Foundation's demurrer to Counts IV and V. The circuit court began by addressing the alter-ego theory that it had dismissed, and stated that it was dispositive that "there was no evidence that the corporate body was created as a sham entity," noting that Code §§ 23.1-101[2] encourages public universities to increase their endowment funds

_____

[2] Code § 23.1-101 provides:

It is the public policy of the Commonwealth that:

6

and Code § 23.1-1010[3] allows the establishment of private entities to engage in fundraising for public institutions.

As to Counts I and II, the court determined that as a public entity, GMU was only responsible for documents it did not possess if (1) it originally possessed the records, which was not alleged, or (2) it knows of another public entity that possesses the records, in which case, it need only provide contact information for that entity. The court also found that GMU was not required to produce the Foundation's documents merely because Dr. Janet E. Bingham ("Dr. Bingham") serves as both Vice President of University Advancement and Alumni Relations for GMU and President and Chief Executive Officer of the Foundation. The court concluded that Dr. Bingham "[w]hen acting in her role as a Vice President of GMU, the University has control and custody over her work product and those records over which she is a custodian at GMU." However, when acting "[i]n her role as President of the Foundation, she is in the employ of the Foundation, and the Foundation has control and custody over her Foundation work records." In

---

1. Each public institution of higher education . . . shall be encouraged in their attempts to increase their endowment funds and unrestricted gifts from private sources and reduce the hesitation of prospective donors to make contributions and unrestricted gifts; and

2. Consistent with § 10 of Chapter 33 of the Acts of Assembly of 1927, in measuring the extent to which the Commonwealth shall finance higher education in the Commonwealth, the availability of the endowment funds and unrestricted gifts from private sources received by public institutions of higher education . . . shall neither be taken into consideration in nor used to reduce state appropriations or payments and shall be used in accordance with the wishes of the donors of such funds to strengthen the services rendered by these institutions to the people of the Commonwealth.

[3] Code § 23.1-1010(3) provides that public institutions may "[c]reate or continue the existence of one or more nonprofit entities for the purpose of soliciting, accepting, managing, and administering grants and gifts and bequests, including endowment gifts and bequests and gifts and bequests in trust."

sustaining the demurrer, the court "conclude[d] that, as a matter of law, where an employee of a public body serves in an official capacity for a third party, that service does not automatically subject documents held by that third party to VFOIA [disclosure obligations]."

As to Counts IV and V, the court held that the Foundation receives insufficient public funds to be designated a public entity, and VFOIA only compels public entities to produce public records. As to Count III, however, the court concluded that whether the Foundation was a public body depended on the "totality of factors present in the relationship between the Foundation and [GMU]."

The circuit court held a bench trial on Count III. Mary Susan Van Leunen ("Van Leunen"), the chief financial officer of the Foundation, testified that the Foundation's mission is to assist GMU by accepting, managing, and investing

> philanthropic funds that come in to the Foundation and we expend those funds for the benefit of [GMU]. We also manage a real estate portfolio for the benefit of [GMU] in most cases, and operate really to accept and manage philanthropic funds, including our endowments and real estate properties.

Van Leunen explained that the Foundation is managed by a Board of Trustees and that GMU does not control the Foundation. She testified that no GMU employee, including the President, can direct the Foundation "as to what to do or how to do it."

Van Leunen testified that the Foundation has assets of "approximately [$]400 million" and receives between $50 and $60 million in gifts and pledge payments annually. She stated that gifts are assessed administrative fees and endowment accounts are assessed annual management fees, neither of which is paid by GMU. She also stated that the Foundation receives a small budget from GMU. In 2016, the Foundation received a budget of $13,500 and, in 2017, $13,600 from GMU, out of which student assistants were paid.

8

Van Leunen stated the Foundation is located on GMU's campus in a building the Foundation owns, and from which the Foundation leases offices to GMU. She testified that Foundation staff are listed on GMU's directory and the Foundation's website is located on GMU's website for convenience. She further testified the Foundation pays more than 75% of GMU's president's salary because of the limit on state funding allowed to be used for that purpose.

Van Leunen admitted that the Foundation is designated as a "component unit" in GMU's accounting, and explained that this designation refers to "private independent entities." She explained the designation was used to reflect the Foundation as a source of potential future financial benefit to GMU.

Van Leunen also testified that she is a member of GMU's Gift Acceptance Committee, which is a committee that reviews unusual gifts to GMU. She stated that she assisted in drafting GMU's gift acceptance policy, because it protects the Foundation from accepting gifts GMU could not use. She explained that the Foundation's distributions are controlled by "[t]he donors' intentions" and that GMU does not direct or control these distributions. She further stated that the Foundation does not engage in fundraising, but once funds are raised, the Foundation assumes a caretaker role to manage, invest, and disburse those funds. She admitted that the 2013 affiliation agreement designates the Foundation as GMU's "primary depository for private gifts on behalf of the university," and the Foundation is designated to "receive all of those private gifts."

On July 5, 2018, the circuit court issued its letter opinion and found that the Foundation was not a public body under VFOIA. The court first noted several facts about the relationship between GMU and the Foundation that were similar to facts courts outside Virginia had found

9

subjected a private foundation to FOIA disclosure. Those facts included: (1) GMU's right to audit the Foundation; (2) the Foundation's obligation to comply with GMU's gift management policies; and (3) that GMU must approve any gift agreement to support a new university program or activity. While noting those factors, the court relied on the statute and determined that the Foundation was not a public body because the Foundation was neither "(1) wholly or principally supported by public funds, or (2) an entity of a public body created to perform delegated functions of a public body or to advise a public body."

Relying on opinions of the Virginia Freedom of Information Advisory Council ("the Advisory Council") and the Office of the Attorney General ("the Attorney General"), the circuit court concluded that private foundations that operate independently of the public institutions they support are not sub-entities of that institution, and because the Foundation operates under its own bylaws and articles of incorporation, the Foundation is not an entity of GMU, and therefore, not a "public body." Additionally, the court reasoned that while fundraising "strengthens the services rendered by the public university," under Virginia's statutes, "[f]undraising is neither itself a service nor a statutory objective of the public institution" and "[a]dvancing a statutory objective is not equivalent to transacting public business." The circuit court went on to find that "[d]onations restricted in their use become public records once a public body accepts and makes use of the funds in observance with their restrictions." Regarding the Gift Acceptance Committee, the circuit court found that it was subject to VFOIA.

> In applying the same rationale that the Foundation is neither a public body nor engaged in a public function, any such independence or exclusion from VFOIA does not extend to the Gift Acceptance Committee. . . . Here, [GMU] through its personnel dictates the operations of the Gift Acceptance Committee. [GMU's] acceptance of any condition or restriction on the use of donated funds necessarily produces a record that is subject to VFOIA.

10

The circuit court dismissed the amended petition with prejudice. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

"On issues of statutory interpretation, we review the circuit court's decision de novo." *Virginia Educ. Ass'n v. Davison*, 294 Va. 109, 115 (2017). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Conyers v. Martial Arts World of Richmond, Inc*., 273 Va. 96, 104 (2007). "Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." *Id*.

### B. Pertinent Virginia Law

#### 1. VFOIA

"VFOIA requires 'public records' to be 'open to inspection and copying by any citizens of the Commonwealth during the regular office hours of the custodian of such records.'" *The Daily Press, LLC v. Office of the Exec. Sec'y of the Sup. Ct. of Va*., 293 Va. 551, 557 (2017) (quoting Code § 2.2–3704(A)). "VFOIA also requires that '[t]he provisions of this chapter shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government.'" *American Tradition Inst. v. Rector and Visitors of Univ. of Va*., 287 Va. 330, 339 (2014) (quoting Code § 2.2-3700(B)). However,

> a VFOIA request only applies to a "public body or its officers and employees." Similarly, VFOIA only applies to "public records in the custody of a public body." Accordingly, all private records are exempt. These . . . [are] the basic parameters for which documents may be requested and from whom.

11

*Id.* at 339-40 (quoting Code § 2.2-3701). VFOIA defines "public records" as:

> all writings and recordings that consist of letters, words or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostatting, photography, magnetic impulse, optical or magneto-optical form, mechanical or electronic recording or other form of data compilation, however stored, and regardless of physical form or characteristics, prepared or owned by, or in the possession of a public body or its officers, employees or agents in the transaction of public business.

Code § 2.2-3701. A "public body" is defined as:

> "Public body" means any legislative body, authority, board, bureau, commission, district or agency of the Commonwealth or of any political subdivision of the Commonwealth, including cities, towns and counties, municipal councils, governing bodies of counties, school boards and planning commissions; governing boards of public institutions of higher education; and other organizations, corporations or agencies in the Commonwealth supported wholly or principally by public funds. It shall include . . . (ii) any committee, subcommittee, or other entity however designated, of the public body created to perform delegated functions of the public body or to advise the public body. It shall not exclude any such committee, subcommittee or entity because it has private sector or citizen members.

*Id.*

### 2. Public Institutions of Higher Education and Foundations

GMU is a "public institution of higher education" as defined in Code § 23.1-100.

> The board of visitors of George Mason University (the board) is a corporation under the name and style of "The Rector and Visitors of George Mason University" and has, in addition to its other powers, all the corporate powers given to corporations by the provisions of Title 13.1 except those powers that are confined to corporations created pursuant to Title 13.1. The board shall at all times be under the control of the General Assembly.

Code § 23.1-1500.

The General Assembly has long maintained that "the public policy of the Commonwealth" is that

12

> [e]ach public institution of higher education, the Frontier Culture
> Museum of Virginia, Gunston Hall, the Jamestown-Yorktown
> Foundation, the Science Museum of Virginia, and the Virginia
> Museum of Fine Arts shall be encouraged in their attempts to
> increase their endowment funds and unrestricted gifts from private
> sources and reduce the hesitation of prospective donors to make
> contributions and unrestricted gifts[.]

Code § 23.1-101(1). To that end, the General Assembly has provided public institutions of

higher education with the power to "[c]reate or continue the existence of one or more nonprofit

entities for the purpose of soliciting, accepting, managing, and administering grants and gifts and

bequests, including endowment gifts and bequests and gifts and bequests in trust." Code

§ 23.1-1010(3). The Foundation exists as a nonprofit entity that "was created for the purpose of

advancing and furthering the aims and purposes of [GMU] and is a private corporation organized

and operated exclusively to receive, hold, invest, and administer property and to make

expenditures to or for the benefit of [GMU]."

### C. VFOIA and Private Nonprofit Corporations

The issues before us in this case are matters of first impression for the Court. VFOIA

does not expressly address private nonprofit foundations that exist for the primary purpose of

supporting public institutions of higher education.[4] In order to be covered by VFOIA, the

Foundation must fall within the definition of a public body and be in possession of public

records. Transparent makes several arguments that the Foundation is a public body *inter alia*

either as an "entity of GMU", an "alter ego" of GMU, or is subject to VFOIA as an "agent" of

---

[4] In 2017, legislation was proposed to amend and reenact the definition of "public body" in Code § 2.2-3701 to include "any foundation that exists for the primary purpose of supporting a public institution of higher education and that is exempt from taxation under § 501(c)(3) of the Internal Revenue Code." SB 1436, Va. Gen Assem. (Reg. Sess. 2017) (unenacted). The bill was left in the Senate's Committee on General Laws and Technology.

13

GMU. We disagree. We will address each of Transparent's arguments that the Foundation is a public body subject to VFOIA in turn.

1. The Foundation is not an "entity of" GMU for purposes of VFOIA

Transparent argues that the circuit court erred in finding that the Foundation was not "an entity of" GMU under VFOIA. Transparent submits that the General Assembly intended to expand the scope of VFOIA when it added the phrase "entity of" to the delegated functions clause in Code § 2.2-3701. Under Transparent's construction, Code § 2.2-3701 "must be read to cover entities, including nonstock corporations that, despite their separate legal identity, were nonetheless created to perform delegated functions of a public body." Transparent urges us to look at the function of the entity while the Foundation and GMU urge us to look at the origin of the entity and whether the organizations are separate. We disagree with Transparent's interpretation.

Code § 2.2-3701 defines "public body" as including "any committee, subcommittee, or other entity however designated, of the public body created to perform delegated functions of the public body or to advise the public body." "This provision simply includes committees, subcommittees, or entities within the types of public bodies covered by FOIA." *Beck v. Shelton*, 267 Va. 482, 487 (2004).

> While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.

*Daily Press*, 293 Va. at 558 (citation omitted).

We must begin with the plain language definition of the word "of" as it is used in Code § 2.2-3701. *See Conyers*, 273 Va. at 104 ("When the language of a statute is unambiguous, we

14

are bound by the plain meaning of that language."). "Of" is used as a function word to describe "from as the place of birth, production, or distribution" or as "indicating the aggregate or whole that includes the part or quantity denoted by the preceding word." Webster's Third New International Dictionary 1565 (1993). The phrase "entity of" can therefore be defined as an entity that was produced or distributed by a public body. There is no evidence that the Foundation was produced or distributed by GMU nor is it a part of GMU created to perform delegated functions. As the circuit court correctly found, the Foundation "is an independent non-stock corporation that coexists alongside" GMU.

The analysis of *RF&P Corp. v. Little*, 247 Va. 309 (1994) is instructive. There we looked to the genesis and separate corporate identity of RF&P and the Virginia Retirement System ("VRS") to determine whether RF&P was "of" VRS, a public body. Finding no such evidence, we concluded that the RF&P Board was not a public body. To so find would have "completely disregard[ed] RF&P's corporate identity." *Id*. at 316. Specifically, we stated that

> [a] corporate entity cannot be disregarded unless it is proved that the corporation is "the *alter ego*, alias, stooge, or dummy of the individuals sought to be [held personally accountable] and that the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime."

*Id*. at 316 (alteration in original).

As in *RF&P Corp.*, the reality of the Foundation's separate identity militates against a finding that it is an "entity of" GMU. The Foundation has always operated under its own sets of bylaws, articles of incorporation, and statutes. The first iteration of the Foundation, the College Foundation, was created as an independent and distinct corporate entity by local businessmen. The College at the time operated as a branch of UVA. When the General Assembly approved the College's expansion into a four-year degree-granting branch of UVA, the College Foundation continued to operate under its stated charitable purposes of fundraising and

15

managing private donations.  When the College separated from UVA and became GMU, the College Foundation officially changed its name to represent the switch from college to university.  The Board of Trustees instituted a corporate reorganization in 1991 that resulted in the structure of the current Foundation continuing with its own bylaws, articles of incorporation, and statutes.  The current Board of Trustees has 49 members of which only six have any formal affiliation with GMU.

The manner in which the Foundation and GMU deal with each other further indicates that they are separate entities.  The record contains evidence that the Foundation and GMU regularly enter into a series of contractual arrangements.  GMU does not supervise the decision making of the Foundation.  Indeed, an Affiliation Agreement governs the relationship between GMU and the Foundation wherein they "acknowledge that each is an independent entity."  The Affiliation Agreement also provides that "[GMU] recognizes that the Foundation is a private corporation with the authority and obligations to keep all records and data confidential with the requirements of law."

Moreover, to the extent that the organizations have different purposes, there can be no delegation of functions from GMU to the Foundation.  The statutory objectives for GMU are to confer degrees on students and approve new academic programs.  Code § 23.1-1503.  By contrast, the Foundation's stated purpose is to serve as the caretaker and manager of funds from private donors, intended for the benefit of GMU, in accordance with the intent of those donors. The General Assembly has "encouraged" private fundraising in the sense that it advances the statutory objectives of public institutions of higher education.  Code § 23.1-101.  The General Assembly has not included fundraising from private sources as a government function of public

16

institutions of higher education.  Therefore, there can be no delegation of public duties where the duty does not exist.

Over the years, the Attorney General and the Advisory Council have issued opinions addressing the status of nonprofit fundraising foundations.  These advisory opinions, while not binding on the Court, are instructive.  *See* Code § 2.2-505 (authorizing the Attorney General to issue advisory opinions); Code § 30-179(1) (authorizing the Advisory Council to issue advisory opinions); *Fitzgerald v. Loudoun Cty. Sheriff's Office*, 289 Va. 499, 504-05 (2015) ("Our de novo review takes into account any informative views on the legal meaning of statutory terms offered by those authorized by law to provide advisory opinions"); *Beck*, 267 Va. at 492 ("While it is not binding on this Court, an Opinion of the Attorney General is 'entitled to due consideration.'") (citation omitted).  In 2009, the Advisory Council issued an opinion that addressed the issue of whether a Foundation, which was a financial fundraising agent of a public body was itself a public body subject to VFOIA.  The opinion specifically addressed that part of the definition of public body which includes the language "any committee, subcommittee, or other entity however designated, of the public body created to perform delegated functions." Advisory Council. Op. AO-09-09 (Oct. 23, 2009).  In doing so it stated "that once established, the Foundation is a corporate entity in its own right separate from the [public agency]."  *Id*.  The opinion then reiterated language from this Court that a corporate entity must not easily be disregarded.  *Id*. (citing *RF&P Corp.*, 247 Va. at 316).  Finding no reason to do so it ultimately opined that "[a]s a separate corporation, the Foundation is not . . . [an] other entity however designated of the [public body]" and therefore was not a public body itself subject to VFOIA. *Id*.

17

The historical treatment of the statutory language strongly supports the interpretation that the Foundation is not an entity of GMU. *See* Advisory Council Op. AO-01-15 (Mar. 17, 2015) ("a private entity does not become a public body solely because the private entity provides goods or services to a public body through a procurement transaction"); 1996 Op. Va. Att'y Gen. 15, 1996 WL 658746 (Sept. 3, 1996) ("separate, nonprofit foundations organized for the benefit of state universities 'need only comply with the laws that govern such corporations'" (quoting 1984-1985 Op. Va. Att'y Gen. 46). We agree with the advisory opinions and conclude that the circuit court did not err in finding that the Foundation was a private, separate corporation and was not an "entity of" GMU created by GMU to perform delegated functions of GMU.

## 2. The Foundation is not supported by public funds

VFOIA's definition of "public body" also includes the requirement that the entity be "supported wholly or principally by public funds." Code § 2.2-3701. The evidence of the Foundation's finances clearly shows the Foundation is not and has never been "supported wholly or principally by public funds." *Id.* At the time of trial, the Foundation's assets totaled approximately $400 million. The Foundation manages its operations through investment income and fees imposed on gifts from private donors. Van Leunen testified that "[i]n any given year [the Foundation] receive[s] between 50 and 60 million dollars in gifts and pledge payments." In 2016, the Foundation's total support and revenue from private gifts and donors was $92 million. By contrast, less than $14,000 of that amount came from GMU's public funding and that amount was used to pay student assistants. The Advisory Council has recognized that "nonprofit fundraising corporations [such as the American Frontier Culture Foundation] typically raise money from private sources, which [is] used both to support the operations of the nonprofit corporation and to provide support to a public body." Advisory Council Op. AO-09-09 (Oct. 23,

18

2009).  Instead of receiving public funds, the private nonprofit organizations, like the Foundation, collect private donations and gifts and pass them on to the public entities, like GMU. We agree with the circuit court's finding that the Foundation was not "wholly or principally supported by public funds" and as such does not fit within the definition of a "public body."

### 3.  The Foundation is not the alter ego of GMU for purposes of VFOIA

Transparent next contends that the circuit court erred in concluding that the Foundation could not be considered an alter ego of GMU for purposes of VFOIA.  Transparent urges us to determine that the circuit court erroneously applied Code § 23.1-1010(3) and disregarded the factors enunciated in *RF&P Corp.* when it found that the Foundation was "not susceptible to a claim of veil piercing."

Code § 23.1-1010(3) expressly allows public institutions to "[c]reate or continue the existence of one or more nonprofit entities for the purpose of soliciting, accepting, managing, and administering grants and gifts and bequests, including endowment gifts and bequests and gifts and bequests in trust."  Contrary to Transparent's argument, we agree with the circuit court that veil piercing is not warranted when, as here, conduct is "expressly authorized by the General Assembly."  We also disagree with Transparent's assertion that the circuit court disregarded *RF&P Corp.*  To the contrary, the circuit court considered and honored the analysis articulated in that opinion.

As the circuit court stated, veil piercing is an "extraordinary act to be taken only when necessary to promote justice."  *C.F. Trust, Inc. v. First Flight L.P*., 266 Va. 3, 10 (2003). "[O]nly 'an extraordinary exception' justifies disregarding the corporate entity and piercing the veil."  *Id.*  (citation omitted).  The Court will not disregard a corporate entity "unless it is proved that the corporation is 'the *alter ego*, alias, stooge, or dummy of the individuals sought to be

19

[held personally accountable] and that the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime.'" *RF&P Corp.*, 247 Va. at 316 (alteration in original) (citation omitted).

The evidence in the record does not support Transparent's assertion that the Foundation operated as the alter ego of GMU. Transparent points to several facts in support of its argument. For example, the Foundation's offices are located in a building that it owns and leases to GMU; Dr. Bingham serves in a dual capacity as President and CEO of the Foundation as well as a Vice President at GMU. While these facts are true, they are insufficient to support the assertion that the Foundation is GMU's alter ego. "The mere showing that one corporation is owned by another or that they share common officers is not a sufficient justification for a court to disregard their separate corporate structure." *Richfood, Inc. v. Jennings*, 255 Va. 588, 592-93 (1998) (citation and internal quotation marks omitted). Nor was there any evidence that the Foundation was used as "a device or sham" by GMU to "disguise wrongs, obscure fraud, or conceal crime." *RF&P Corp.*, 247 Va. at 316 (citation and internal quotation marks omitted). As we have already discussed, the Foundation and GMU are independent corporate entities. While the Foundation and GMU acknowledge that they share a unique business relationship, their relationship is governed by formal contractual arrangements that reflect their independent status. The circuit court did not err when it found that the Foundation is not the "alter ego" of GMU.

4. The Foundation is not the agent of GMU for purposes of VFOIA

Code § 2.2-3701 defines "public records" as materials "in the possession of a public body or its officers, employees or agents in the transaction of public business." Transparent argues that the Foundation's records are public records under VFOIA because the Foundation is the

20

agent of GMU.[5]  Transparent urges the Court to reverse the circuit court and order the

Foundation to disclose the requested records.

The Court has "defined the term 'agency' as a fiduciary relationship resulting from one

person's manifestation of consent to another person that the other shall act on his behalf and

subject to his control, and the other person's manifestation of consent so to act." *Acordia of*

*Virginia Ins. Agency, Inc. v. Genito Glenn, L.P.*, 263 Va. 377, 384 (2002) (citation and internal

quotation marks omitted).  "While the power of control is an important factor to consider in

determining whether an agency relationship exists, '[a]gency may be inferred from the conduct

of the parties and from the surrounding facts and circumstances." *Id*. (citations omitted).  "The

question of agency *vel non* is one of fact for the fact finder unless the existence of an agency

relationship depends upon unambiguous written documents or undisputed facts.  Moreover, the

party alleging an agency relationship has the burden of proving it." *Reistroffer v. Person*, 247

Va. 45, 48 (1994) (citations omitted).

Transparent has not shown that the Foundation is GMU's agent.  The Foundation and

GMU operate at arms-length and, while they collaborate for the benefit of GMU, each maintains

its independent status as a private non-stock corporation and a public institution for higher

education respectively.  As we have already stated, the Foundation operates independently of

GMU under its own bylaws, articles of incorporation, and statutes.

---

[5] In its reply brief, Transparent asserts that the circuit court never reached the issue of whether the Foundation is GMU's agent.  The circuit court noted when sustaining the demurrer that "the issue of whether or not the Foundation's performance of designated public functions on behalf of the University as its agent renders the Foundation a public body within the meaning of VFOIA remains to be decided at trial."  Transparent had the opportunity at trial to prove that an agency relationship existed and failed to do so.  The evidence at trial supports the circuit court's finding that GMU and the Foundation are independent entities and that the Foundation is not subject to VFOIA as it is not a public body nor are its records public.  Based on our ruling today, Transparent's assertion that the circuit court failed to reach the agency question is moot.

The Foundation's stated purposes, obligations to its private donors, and the discretion of its Trustees govern its operations. Moreover, the statute under which the Foundation is formed dictates that "funds shall be used in accordance with the wishes of the donors of such funds." Code § 23.1-101(2). The Affiliation Agreement with GMU reiterates this statutory mandate as it reflects the Foundation's purpose of managing gifts in accordance with donor intent. Nor was there evidence at trial from which one could infer an agency relationship.

The evidence at trial showed that GMU does not control the Foundation. To the contrary, Van Leunen specifically testified, without challenge, as to the absence of control by GMU over the Foundation. The specific questions were asked and answered as follows:

> [Question:]  Does [GMU] have any control over the Foundation?
>
> [Van Leunen:]  No. The Foundation Board of Trustees oversees and manages the operations of the Foundation.
>
> [Question:]  Can [GMU's] president direct the Foundation on what to do or how to do it?
>
> [Van Leunen:]  No.
>
> [Question:]  Can any [GMU] employee direct the Foundation or its employees as to what to do?
>
> [Van Leunen:]  No.

Indeed, Van Leunen testified that on occasion the Foundation has denied GMU's requests to fund real estate projects. She also testified that the Foundation administers donations in accordance with the donor's wishes. This would be consistent with the statute and with the Affiliation Agreement.

Even assuming arguendo that the Foundation is an agent of GMU, VFOIA still would not apply to the Foundation's documents. As previously stated, we held in *American Tradition* that VFOIA requests "only appl[y] to 'public records in the custody of a public body.'" 287 Va. at

22

339. Again, we find the rationale of the Advisory Council persuasive. The Advisory Council has stated that a private entity's records are not subject to VFOIA because "a private entity does not become a public body solely because the private entity provides goods or services to a public body through a procurement transaction." Advisory Council Op. AO-01-15 (Mar. 17, 2015). Because the Foundation is not a public body, the Foundation's documents in its custody are not subject to VFOIA even if the Foundation is GMU's agent. *American Tradition*, 287 Va. at 339; Code § 2.2-3701.

Finally, the Foundation documents are not subject to VFOIA because they were not generated in the transaction of public business. The Foundation documents requested by Transparent were:

> [f]or the years of 2008 through 2012, any grants, cooperative agreements, gift agreements, contracts, or memoranda of understanding (including any attachments thereto) involving a contribution to or for [GMU] from any of [several charitable foundations under Charles Koch, Claude R. Lambe, and David Koch].

These documents directly relate to the Foundation's mission of managing gifts from private donors and as such were not "prepared for or used in the transaction of public business and [are] not public records subject to [V]FOIA." Advisory Council Op. 14-12 (Oct. 17, 2012) (determining that the phone bills of a member of a public university's board of visitors who used his cell phone to conduct public and private business were not "public records" under VFOIA because they were not "prepared for or used in the transaction of public business"). *See also* Advisory Council Op. 03-04 (Feb. 10, 2004) (determining that a discussion of public business would not include discussions unrelated to the use of public funds "such as private fundraising efforts"). The circuit court correctly held that records regarding donations from private donors do not constitute the transaction of public business.

23

### 5. Dr. Bingham

Finally, Transparent argues that the circuit court erred in granting GMU's demurrer because it did not consider whether Dr. Bingham in fact used or possessed the requested Foundation documents in performing her duties as a Vice President of GMU. GMU responds that the circuit court did not err in sustaining its demurrer because Transparent's Amended Petition did not allege that, Dr. Bingham prepared, owned, or possessed the records in her role as Vice President.

Again, "public records" are writings or recordings "prepared or owned by, or in the possession of a public body or its officers, employees or agents in the transaction of public business." Code § 2.2-3701. GMU is correct in its statement that "[e]ven accepting that Dr. Bingham, at some point, accessed or used certain records 'in the performance of fundraising and endowment management activities,' that alone would not be sufficient to make those 'public records' subject to VFOIA."

In sustaining GMU's demurrer, the circuit court discussed Dr. Bingham's roles as a Vice President for GMU and as President and CEO of the Foundation. The court described Dr. Bingham as wearing "two hats" in that "the functions she performs while wearing one [hat] are not imputed to her position under the other." The court correctly found that GMU is not required to produce the Foundation's documents merely because Dr. Bingham is a common employee of GMU and the Foundation. "When acting in her role as a Vice President of GMU, the University has control and custody over her work product and those records over which she is a custodian at GMU." However, when acting "[i]n her role as President of the Foundation, she is in the employ of the Foundation, and the Foundation has control and custody over her Foundation work records."

24

As we have already found, GMU and the Foundation are separate and distinct entities, one being a public institution and the other being a private corporation. The fact that they share a common employee "does not alter the separate character of the two" entities. *RF&P Corp.*, 247 Va. at 316. The circuit court stated, rightly so, that "[t]he presence of dual or multiple officers or board members does not expose the records of both corporations to search when an inquiry is directed at one corporation only. It is the *position* over which the corporation has control, not the *person*." *See Washington & Old Dominion Users Ass'n v. Washington & Old Dominion R.R.*, 208 Va. 1, 6 (1967) (refusing to disregard separate corporate existence of wholly owned subsidiary even though "most of the officers and directors" of the subsidiary "have also been officers and directors" of the parent). The circuit court did not err in concluding that "where an employee of a public body serves in an official capacity for a third party, that service does not automatically subject documents held by that third party to VFOIA liability." To the extent that while wearing her GMU hat, Dr. Bingham handled Foundation documents, these documents remained Foundation documents and as such, were not subject to VFOIA because "VFOIA only applies to 'public records in the custody of a public body.'" *American Tradition*, 287 Va. at 339.

### III. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the circuit court finding that the Foundation is not a public body subject to VFOIA. Had the General Assembly intended the unreserved inclusion of non-profit foundations, that exist for the primary purpose of supporting public institutions of higher education, as public bodies under VFOIA, it could have so provided, but it has not. Policy determinations of this nature are peculiarly within the province of the General Assembly, not the judiciary. *See, e.g.*, *Daily Press, LLC v. Office of Exec. Sec'y of*

25

*Supreme Court*, 293 Va. 551, 557 (2017) ("Public policy questions concerning where to draw the line with respect to VFOIA fall within the purview of the General Assembly.").

*Affirmed*.