PRESENT: Goodwyn, Mims, Powell, Kelsey, and McCullough, JJ., and Russell and Millette, S.JJ.

BEVERLY COLE, INDIVIDUALLY, ET AL.

OPINION BY
v. Record No. 171205                     JUSTICE S. BERNARD GOODWYN
                                         May 28, 2020
SMYTH COUNTY BOARD OF SUPERVISORS, ET AL.

FROM THE CIRCUIT COURT OF SMYTH COUNTY
Sage B. Johnson, Judge

In this appeal, we consider whether closed sessions conducted by a board of supervisors violated the Virginia Freedom of Information Act (VFOIA), Code § 2.2-3700 through -3715.

## I. BACKGROUND

The Smyth-Bland Regional Library (the Library) was a regional library system in Smyth and Bland counties in Virginia. The Library was managed by a board of trustees with nine members—seven of which were appointed by the Smyth County Board of Supervisors (the Board), the governing public body of Smyth County, Virginia.

On October 27, 2016, the Board held a meeting and voted to remove its seven appointees to the Library's board of trustees. The Board then named its own seven members as new trustees on the Library's board of trustees.

On November 4, 2016, three of the removed trustees—Perry Mowbray, Justine Bradley, and Page Coulthard—sued the Board in the Circuit Court of Smyth County seeking reinstatement to the Library's board of trustees (the Mowbray Case). The plaintiffs alleged that the Board unlawfully removed them from the Library's board of trustees and unlawfully appointed the Board members as replacement trustees.

On January 26, February 14, February 23, and March 14, 2017, the Board held public meetings at which it approved motions to enter into closed sessions "under the Code of Virginia, Section 2.2-3711 -A.7 Legal; discussion with legal counsel and staff pertaining to actual or

probable litigation" (the Motions). During the closed sessions on these dates, the Board discussed potential disbandment of the Library as it pertained to the Mowbray Case. It also discussed the financial costs and benefits of disbanding the Library.

On March 28, 2017, the Board noticed and held a "special meeting" open to the public.[1] At that meeting, without discussion and without receiving public comment on the issue, the Board adopted a resolution to "disband" the Library. The resolution passed by the Board states, as the justification for its disbandment of the Library, that the "administrative costs associated with the operation of a regional library system now exceed the financial benefit of maintaining a regional library system."

## II. CIRCUIT COURT PROCEEDINGS

On April 5, 2017, Beverly Cole—the President of "Friends of the Smyth-Bland Regional Library" (FS-BRL), a non-profit that promotes the Library—filed a petition for injunction (the Petition) in the Circuit Court of Smyth County against the Board and Michael L. Carter, the Smyth County administrator.[2] The Petition alleges that the Board violated Code § 2.2-3707(D) of VFOIA by issuing an unreasonable notice of the March 28, 2017 special meeting, at which the Board voted to disband the Library. It alleges that the Board also failed to comply with other provisions of VFOIA—specifically, Code §§ 2.2-3711 and -3712. The Petition asserts that the Board discussed potential disbandment of the Library at its closed sessions in January through March 2017, and that such discussions were not exempted from VFOIA's open meeting

---

[1] A local governing body may conduct business at both regularly-scheduled meetings and "special meetings"; the latter of which are held "as [the governing body] deems necessary, at such times and places as it finds convenient." *See* Code §§ 15.2-1415 through -1417.

[2] The Petition initially listed the FS-BRL as the only plaintiff. Cole was later substituted, individually and as President on behalf of the FS-BRL, as the plaintiff in this case, without objection.

requirement. In the Petition's prayer for relief, Cole asks the circuit court to find that the Board violated VFOIA, to issue an injunction setting aside the March 28, 2017 vote to disband the Library until the Board "conducts open public hearings and otherwise explains the rationale for the [Library's] dissolution," to award her attorney's fees under Code § 2.2-3713(D), and to enter a civil penalty against the Board.

On April 12, 2017, the circuit court held a factual hearing on the Petition and took the case under advisement.[3] The parties agreed to these relevant facts:

> At the time the Mowbray [C]ase was filed, there was other litigation pending in the Smyth County Circuit Court against [the Board] which was not in any way related to [the Library].
> That during regularly scheduled public meetings held on January 26th, February 14th, February 23rd, and March 14th of 2017, [the Board] did approve motions to enter into closed session. At each meeting, the motions approved to enter into closed session stated that the Board was entering into closed session "under the Code of Virginia, Section 2.2-3711 -A.7 Legal; discussion with legal counsel and staff pertaining to actual or probable litigation."
> During the closed sessions, [the Board] discussed disbanding [the Library] with respect to the impact of the pending [Mowbray Case]. All information relied upon by the Board [] regarding the costs and/or benefits of disbanding [the Library] was presented orally by County Administrator Michael Carter during these closed sessions.
> Supervisor Charles E. Atkins had concerns that the discussions regarding disbanding [the Library] were outside of the subject matter identified in the motions to enter into closed sessions. Mr. Atkins called the advisory council for the Virginia Freedom of Information Act seeking an opinion. After speaking with the [VFOIA] advisory council, Mr. Atkins voiced his concerns to the Board.
> [The Board] has adopted formal rules and procedures to follow when calling a special meeting of the Board.
> On March 23, 2017, [the Board] posted notice of a "special meeting" to be held on March 28, 2017. According to the notice, the special meeting was "for the purpose of discussion concerning the Smyth Bland Regional Library." The testimony of [the Board's] Chairman Wade H. Blevins, Jr. was that he called the special meeting to "deal with the library issue."
> On March 23, 2017, at the specially called meeting, [the Board] voted 6-1 to disband [the Library]. The Chairman asked the Board if there was any discussion prior to voting on the resolution, and hearing none by any Board

---

[3] There is no transcript of the factual hearing in the record before us. The parties instead submitted a written statement of facts in lieu of a transcript, pursuant to Rule 5:11(e).

3

member, the resolution was voted upon and passed with a 6-1 vote, with the sole dissenting vote being cast by Supervisor Charles Atkins. There was no opportunity for public comment at the meeting, despite the fact that numerous citizens were in attendance.

Prior to the special meeting, the issue of disbanding [the Library] was neither discussed nor placed upon the agenda for discussion in any open meeting of [the Board], and there were [sic] no public hearing in which [a discussion of] the potential dissolution of [the Library] was had.

The official resolution adopted by [the Board] disbanding [the Library], is part of the official record and sets forth the reasons the Board decided to dissolve [the Library].

That Board of Supervisor [member], G. Blake Frazier, testified that his decision to vote to disband [the Library] was purely an economic decision and had nothing to do with the Mowbray [Case] or any other litigation.

Board of Supervisor [member] Charles Atkins testified that he voted against disbanding [the Library] because he believed the Board [] had not fully informed the public about the decision to disband [the Library].

After the hearing, on April 21, 2017, Cole filed a brief in support of the Petition arguing, in part, that the Motions for the closed sessions violated Code § 2.2-3712 of VFOIA. Cole asserted that, although the Motions listed the purpose of the closed sessions as being to discuss ongoing litigation, the Motions failed to include the specific subject matter for the closed sessions, in violation of Code § 2.2-3712(A). She also contended that the Board, by its own admission, as stated in the resolution it passed, disbanded the Library for financial reasons and not because of any pending litigation, such as the Mowbray Case. Thus, the Board's closed sessions violated Code § 2.2-3711 because subjects which exceeded the scope of the VFOIA exemption claimed by the Board were discussed during the closed sessions.

The Board filed a motion to strike the Petition. It argued that the closed sessions were properly held under the Code § 2.2-3711(A)(7) exemption in VFOIA regarding consultation or briefing about "actual or probable litigation" when such consultation or briefing in an open meeting would "adversely affect the Board's negotiating or litigating posture." The Board

4

contended that the discussions at the closed sessions satisfied the exemption because disbandment of the Library was "intertwined" with the Mowbray Case.

The Board further argued that the circuit court could not adjudicate any issue regarding the legal sufficiency of the Motions to enter into closed sessions under VFOIA because Cole failed to allege any such violation in the Petition. Even if the circuit court decided to consider the issue of the sufficiency of the Motions, the Board contended that VFOIA did not require the Board "to disclose in detail the legal matters or issues to be considered," and therefore the Motions were sufficient in identifying the subject matter of the closed sessions.

On May 26, 2017, the circuit court issued a letter opinion. In its letter opinion, the circuit court noted that there were two issues before it: "(1) whether the closed meetings in this case were lawfully held and (2) if lawfully held, was there discussion of matters in the lawfully held closed session that exceeded the permitted scope of the closed meeting[s]?"

The court ruled that the closed sessions were properly held and that the discussions in the closed sessions were exempted, under Code § 2.2-3711(A)(7), from the open meeting requirements of VFOIA. It noted that the facts clearly indicated that there was active litigation involving the Library pending against the Board and concluded that "discussions and options discussed in an open meeting could have very easily adversely affected the Board's position in the pending litigation." The circuit court entered an order on June 21, 2017, finding that the Board complied with VFOIA, denying the Petition's requests for an injunction, civil penalty, and attorney's fees, and dismissing the Petition with prejudice.

Cole appeals.[4] We granted three assignments of error:

---

[4] Cole did not appeal the denial of the injunction. The parties agree that the injunctive relief is now moot because the Board voted to disband the Library during the open session held on March 28, 2017.

1. The trial court erred when it found that the Smyth County Board of Supervisors properly entered into closed sessions to discuss dissolving the Smyth-Bland Regional Library.

2. The trial court erred when it found that the subjects discussed during closed sessions held by the Smyth County Board of Supervisors did not exceed the scope of the subjects set forth in their motions to enter into closed meetings.

3. The trial court erred by not awarding the Petitioners reasonable attorney fees and costs.

## III. ANALYSIS

One of the purposes of VFOIA is to "ensure[] the people of the Commonwealth . . . free entry to meetings of public bodies wherein the business of the people is being conducted." Code § 2.2-3700(B). Accordingly, all government meetings must be open to the public, "unless an exemption is properly invoked." *Id*. A public body that asserts an exemption has the burden of establishing that it applies. Code § 2.2-3713(E).

We review issues of statutory interpretation and a circuit court's application of a statute to its factual findings, de novo. *Virginia Dep't of Corr. v. Surovell*, 290 Va. 255, 262 (2015). "In construing statutory language, we are bound by the plain meaning of clear and unambiguous language." *White Dog Publ'g, Inc. v. Culpeper Cty. Bd. of Supervisors*, 272 Va. 377, 386 (2006). Additionally, the General Assembly has directed that VFOIA "be liberally construed" to promote public access to government activities and operations, and that any asserted exemption from public access "shall be narrowly construed." Code § 2.2-3700(B).

Cole's assignments of error raise three issues: (1) did the Board properly enter into its closed sessions, (2) did the Board's discussions in the closed sessions go beyond the scope of the VFOIA exemption which purportedly authorized the closed sessions, and (3) is Cole entitled to attorney's fees and costs? We address each of these issues, in turn.

6

A. Whether the Board Properly Entered into Its Closed Sessions

In her first assignment of error, Cole claims that the circuit court erred in ruling that the Board properly entered into the relevant closed sessions. As a threshold matter, the Board argues that Rule 5:25 precludes this Court from ruling on Cole's first assignment of error. It argues that Cole failed, in the circuit court, to properly raise the allegation that the manner in which the Board entered into its closed sessions violated VFOIA. The Board contends that while Cole alleged in the Petition that the content of the discussions at the closed sessions violated VFOIA, she failed to allege, with reasonable specificity, that the Motions themselves violated VFOIA. Because of Cole's purported failure to properly plead that the Motions violated VFOIA, the Board argues that Cole is precluded by Rule 5:25 from asserting an error based upon the circuit court's ruling that the Motions to enter into closed sessions were proper. We disagree.

Rule 5:25 states that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." The purpose of this rule is to "afford the trial court an opportunity to rule intelligently on the issues presented." *Weidman v. Babcock*, 241 Va. 40, 44 (1991). However,

> [n]o party, after having made an objection or motion known to the court, shall be required to make such objection or motion again in order to preserve his right to appeal, challenge, or move for reconsideration of, a ruling, order, or action of the court. . . . Arguments made at trial via written pleading, *memorandum*, recital of objections in a final order, oral argument reduced to transcript, or agreed written statements of facts shall, unless expressly withdrawn or waived, be deemed preserved therein for assertion on appeal.

Code § 8.01-384 (emphasis added).

Cole's Petition asked the circuit court to find that the Board violated VFOIA. In her Petition, Cole alleged that the Board violated Code §§ 2.2-3711 and -3712. The Petition asserts that, in violation of Code § 2.2-3711, the Board discussed matters in the closed sessions that

7

were beyond the scope of the claimed closed meeting exemption, specifically, disbanding the Library for financial reasons. As noted by the Board, the Petition does not specify the manner in which Cole alleged Code § 2.2-3712 was violated. However, in her brief in support of the Petition, Cole asserted that the Motions for the closed sessions violated Code § 2.2-3712(A) because the Motions failed to state the subject matter of the closed sessions, as required by that statute.

A petition to enforce VFOIA's provisions "shall allege with reasonable specificity the circumstances of the denial of the rights and privileges conferred by this chapter." Code § 2.2-3713(D). "[N]o court can base its judgment or decree upon facts not alleged or upon a right which has not been pleaded and claimed." *Ted Lansing Supply Co. v. Royal Aluminum & Constr. Corp.*, 221 Va. 1139, 1141 (1981). The Board argued to the circuit court that Cole had not pled her claim of a violation of Code § 2.2-3712 with enough specificity and that the circuit court therefore could not consider the merits of that claim.

Despite the Board's assertion that Cole's pleadings failed to state the claim that the Motions themselves violated Code § 2.2-3712, the circuit court considered and ruled on that claim. In its letter opinion, the circuit court specifically noted that one of the issues in dispute was "whether the closed meetings in this case were lawfully held." By not granting the Board's objection, and proceeding to rule on the issue, the circuit court confirmed that it considered the Petition and other pleadings filed by Cole to be sufficient to assert a claim that the Board had violated Code § 2.2-3712.

The issue of whether the Motions violated Code § 2.2-3712 was presented to the circuit court; the circuit court was given the opportunity to rule intelligently on the issue, and it did so.

8

Cole preserved her assignment of error to the circuit court's ruling on that issue. *See* Code § 8.01-384. Cole's appeal of that ruling is thus not barred by Rule 5:25.

On the merits, Cole argues that the circuit court erred in holding that the Motions complied with the content requirements for a motion for a closed meeting stated in Code § 2.2-3712(A). She contends that the Motions properly identified the statutory exemption and the purpose of the sessions—to discuss "actual or probable litigation"—but she argues that the Motions did not identify the subject matter of the closed sessions. She contends that the Motions never identified any lawsuit or controversy for discussion, nor the Mowbray Case or the Library in particular.

The Board contends that the General Assembly removed the specificity requirement regarding the subject matter of a closed session when it amended the predecessor statute to Code § 2.2-3712(A) in 1999. The Board therefore argues that the General Assembly did not intend that a motion for a closed meeting has to specifically identify the subject matter of the closed meeting, and that the Motions passed by the Board therefore complied with VFOIA.

To invoke an exemption for a closed meeting, a public body must make a recorded vote in an open meeting via a motion that identifies (i) the subject matter of the closed meeting, (ii) the purpose of the closed meeting, and (iii) the applicable statutory exemption. Code § 2.2-3712(A). "A *general reference* to the provisions of this chapter, *the authorized exemptions* from open meeting requirements, *or the subject matter of the closed meeting* shall not be sufficient to satisfy the requirements for holding a closed meeting." *Id.* (emphases added).

The Motions at issue in the present case stated that they were made "under the Code of Virginia, Section 2.2-3711 -A.7 Legal; discussion with legal counsel and staff pertaining to

9

actual or probable litigation." The statute referenced in the Motions exempts the open meeting requirements for

> [c]onsultation with legal counsel and briefings by staff members or consultants pertaining to actual or probable litigation, where such consultation or briefing in open meeting would adversely affect the negotiating or litigating posture of the public body.

Code § 2.2-3711(A)(7). Cole concedes that the Motions properly identified the purpose of the closed sessions and the applicable statutory exemption, but argues that they failed to identify the subject matter of the sessions. We agree, for two reasons.

First, the Motions failed to include a subject matter for the closed sessions at all. "Subject matter" is defined, in part, as the "issue presented for consideration" or the "thing in dispute." Black's Law Dictionary 1723 (11th ed. 2019). "[D]iscussion with legal counsel" about "actual or probable litigation," as mentioned in the Motions, did not identify an "issue" or a "thing in dispute"—it merely provided that the Board would discuss issues or things in dispute, in general. The Motions did not include any additional information to reveal the actual subject matter of the closed sessions.

Moreover, if a motion for a closed meeting could satisfy Code § 2.2-3712(A) by merely citing the exemption and paraphrasing the statutory language of the exemption, despite the statutory language which prohibits a party from doing so, it would render the subject matter requirement in Code § 2.2-3712(A) meaningless. *See Newberry Station Homeowners Ass'n v. Board of Supervisors*, 285 Va. 604, 615 n.5 (2013) ("[I]t is a settled principle of statutory construction that every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary." (citation and internal quotation marks omitted)). By including a subject matter requirement for a motion for a closed meeting—in addition to the purpose and applicable exemption requirements—the plain language of the

10

statutes indicates that the General Assembly intended that such motions contain more than a citation to an exemption and a reference to the language of that exemption. A public body must identify the subject matter more specifically in a motion for a closed meeting. In the instant case, the Board gave no indication in the Motions that it intended to discuss the Mowbray Case, the Library, or any other particular case, controversy, or issue in its closed sessions. Thus, the Motions violated Code § 2.2-3712(A)'s subject matter requirement.

Second, even if it is assumed that the Motions' mention of "actual or probable litigation" constituted an attempt to state the subject matter of the closed sessions, such reference is too general to adequately identify the subject matter of the closed sessions. Code § 2.2-3712(A) states that a "general reference to . . . the subject matter of the closed meeting shall not be sufficient." Liberally construed according to Code § 2.2-3700(B), this prohibition against "general reference[s]" is an implicit requirement that a motion effectively identify the subject matter to be discussed in the closed session. The Motions' broad mention of "actual or probable litigation" does not do so.

The Board nonetheless argues that there is no specificity requirement in Code § 2.2-3712(A) because of that statute's legislative history. It points out that the statute's predecessor form, Code § 2.1-344.1 (1995), required motions for a closed meeting to "specifically [state] the purpose or purposes which are to be the subject of the meeting, and reasonably identify[] the substance of the matters to be discussed." The General Assembly deleted this language in 1999 and replaced it with language nearly identical to the current phrasing of Code § 2.2-3712(A). *See* 1999 Acts chs. 703 and 726. The Board interprets the General Assembly's amendments in 1999 as legislative intent to delete a specificity requirement for a public body's motion to enter into a closed meeting.

11

Contrary to the Board's arguments, we cannot consider the legislative history of Code § 2.2-3712(A) to resolve the issue before us. "[W]hen the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is *not permitted* because we take the words as written to determine their meaning." *Newberry Station Homeowners Ass'n*, 285 Va. at 614 (emphasis added) (citation and international quotation marks omitted). As stated above, we can ascertain the plain meaning of the "subject matter" requirement and the prohibition against "general reference[s]" to resolve whether the Motions properly identified the subject matter of the closed sessions. The relevant statutory terms are not ambiguous. Therefore, we need not consider the legislative history of Code § 2.2-3712(A).

Because the Motions failed to sufficiently identify the subject matter of the closed sessions, the circuit court erred in holding that the closed sessions were properly held pursuant to Code § 2.2-3712.

B. Whether the Board's Discussions in the Closed Sessions Violated VFOIA

Cole also argues that the circuit court erred in holding that the Board's discussions in the closed sessions were not outside the parameters of the expressed legal matters exemption for the closed meetings. Cole further asserts that public discussion of disbanding the Library for financial reasons would not have "adversely affect[ed]"—as that phrase is used in Code § 2.2-3711(A)(7)—the litigation or negotiating posture of the Board in the Mowbray Case.

Under VFOIA, closed sessions are only authorized for certain, limited purposes. Code § 2.2-3711. In the circuit court, the Board had the burden to show that the discussions at the closed sessions were within the scope of a statutory exemption for closed sessions. Code §§ 2.2-3712(C) and -3713(E). The Motions identified Code § 2.2-3711(A)(7) as the statutory

exemption to the open meeting requirement, which authorized the closed sessions. That statute exempts meetings for

> [c]onsultation with legal counsel and briefings by staff members or consultants pertaining to actual or probable litigation, where such consultation or briefing in open meeting would adversely affect the negotiating or litigating posture of the public body.

Code § 2.2-3711(A)(7).

The Board notes that the plaintiffs in the Mowbray Case sought to be reinstated as board members of the Library, and that disbanding the Library would render the Mowbray Case "moot, at least partially." It also argues that public discussion regarding the costs and benefits of disbandment of the Library would have "adversely affect[ed]" the Board's negotiating or litigating posture in the Mowbray Case as regards its exercise of this potential legal option. It concludes that the circuit court did not err in stating that the discussions in the closed sessions were within the parameters of the Board's claimed exemption.

At the outset, we note that Code § 2.2-3711(A)(7) is not a categorical exemption for any discussion between a public body and staff or legal counsel. Instead, the statute exempts consultations with legal counsel and briefings by staff only when such consultation or briefing "*pertain*[*s*] *to actual or probable litigation*," and only when the briefing or consultation that pertains to the litigation would "*adversely affect the negotiating or litigating posture of the public body*" in such litigation, if the consultation or briefing were to occur in public. Code § 2.2-3711(A)(7) (emphases added). Thus, the inquiry in the instant case is whether the relevant Board discussions in closed sessions concerned the Mowbray Case litigation, and whether the Board's negotiating or litigating posture in the Mowbray Case would have been adversely affected, if such discussions were held in a meeting open to the public.

13

In the Mowbray Case, the former Library board members sought to be reinstated to the Library's board. The only alleged relevance of the Mowbray Case to the finances of the Library is that the Library's disbandment would coincidentally moot the primary relief requested by the Mowbray Case plaintiffs.

Exemptions to VFOIA are to be narrowly construed. Code § 2.2-3700(B). The information and discussions concerning the economic viability of the Library were too attenuated from the Mowbray Case litigation to be found pertinent to that litigation. This conclusion is bolstered by the resolution passed by the Board.

In its resolution to disband the Library, the Board clearly stated that its decision to disband the Library was based upon the fact that the "administrative costs associated with the operation" of the Library exceeded its financial benefit to the County. The parties agreed that the resolution sets forth the reasons the Board decided to disband the Library. The Board's resolution does not mention the Mowbray Case or any other pending or potential litigation as being relevant to the Board's decision.

It is agreed that the information concerning the costs and benefits of disbanding the Library was conveyed to the Board in the closed sessions. Thus, the record shows that the Board's decision to disband the Library was motivated purely by economic justifications unrelated to the Mowbray Case, and that information in support of that justification was presented to and discussed by the Board in the closed sessions. The presentation of that information to the Board and the Board's discussions regarding the economic viability of the Library concerned a subject beyond the parameters of the claimed exemption.

Further, public disclosure and discussion of the economic viability of continuing the operation of the Library would not have adversely affected the Board's litigating or negotiating

14

position in the action brought by the plaintiffs in the Mowbray Case. The Board had the authority to disband the Library, whether there was an economic justification for doing so or not. There is nothing in the record showing that the plaintiffs in the Mowbray Case could have gained any advantage in their case as the result of public disclosure of the Board's consideration of disbanding the Library for economic reasons. If anything, the known possibility of the Library's disbandment would strengthen the Board's position in the Mowbray Case. Additionally, even if the plaintiffs in the Mowbray Case learned, via an open meeting, that continued operation of the Library was economically viable, rather than economically disadvantageous, the plaintiffs' negotiating or litigating posture in the case would remain unchanged. Public disclosure of the Board's consideration of the economic costs and benefits of continuing the operation of the Library would not have "*adversely* affect[ed] the negotiating or litigating posture" of the Board, as related to the Mowbray Case. *See* Code § 2.2-3711(A)(7) (emphasis added).

The circuit court erred in ruling that all of the discussions in the closed sessions were properly exempted from the requirements of VFOIA.

### C. Attorney's Fees Under Code § 2.2-3713(D)

In her third assignment of error, Cole requests this Court to award her attorney's fees.

> A single instance of denial of the rights and privileges conferred by [VFOIA] shall be sufficient to invoke the remedies therein. If the court finds the denial to be in violation of the provisions of this chapter, the petitioner shall be entitled to recover reasonable costs, including costs and reasonable fees for expert witnesses, and attorney fees from the public body *if the petitioner substantially prevails on the merits of the case, unless special circumstances would make an award unjust*.

Code § 2.2-3713(D) (emphasis added).

Thus, a VFOIA plaintiff can recover attorney's fees if a court finds (1) the public body committed a single VFOIA violation, and (2) the plaintiff "substantially prevails on the merits of the case." *See id.*; *Bergano v. City of Virginia Beach*, 296 Va. 403, 411 (2018). The "merits of

15

the case" means "the object of the action in which a claim that [VFOIA] has been violated is made." *Hill v. Fairfax Cty. Sch. Bd.*, 284 Va. 306, 314 (2012) (citation and internal quotation marks omitted).

In light of our conclusion that the Board violated VFOIA, we will remand this case to the circuit court for it to determine whether Cole is entitled to an award of attorney's fees and costs as provided by Code § 2.2-3713(D), and, if so entitled, the amount of such fees and costs.

IV. CONCLUSION

For the foregoing reasons, we hold that the circuit court erred in holding that the Board did not violate VFOIA when it passed Motions to hold sessions closed to the public, and discussed matters in those closed sessions that were not exempted from the open meeting requirement of VFOIA. The judgment of the circuit court will be reversed and vacated, and the case remanded to the circuit court for it to enter judgment for Cole consistent with this opinion and to address the issue of Cole's entitlement to attorney's fees under Code § 2.2-3713(D).

*Reversed and remanded.*